ALEXANDER, trustee, *et al. vs.* SEARCY *et al.*

1. Whether the Macon and Western railroad, or the Central railroad, after it and the Macon and Western consolidated, had power and authority under their charters or not to purchase and own stock of another railroad, the stockholders or the Savannah, Griffin and North Alabama railroad who bring this bill cannot now complain. They have acquiesced in this illegal act, if it is illegal, for from seven to fifteen years. They have received the money of these corporations, and after acquiescence for that length of time, with a full knowledge of the facts, equity will not allow them to complain.

(a) The general rule is that, while a minority of the stockholders of a corporation may maintain a bill in equity in behalf of themselves and other stockholders for fraud, conspiracy or acts *ultra vires*, against a corporation, its officers and others who participate therein, when the minority stockholders have been injured or damaged by such acts, they must act promptly. If they postpone their complaint for an unreasonable time, they forfeit their right to equitable relief.

(b) The act of purchasing and owning and voting stock in one railroad company by another railroad company, may be *ultra vires* so far as the public is concerned; and while the acquiescence of a stockholder will not render valid the illegal act, it will prevent him from taking advantage of its invalidity, if complaint be not made within a reasonable time after knowledge of the facts. The public or the State is not thus bound. The State, through its proper officer, may, at any time, commence proceedings to prevent it or to declare it *ultra vires* and illegal.

2. The bill was filed by a few persons owning a very small portion of the capital stock of the S., G. & N. A. railroad, against the Central Railroad and Banking Company, which owns much more than a majority of the capital stock, against the trustee for the holders of mortgage bonds of the S., G. & N. A. railroad, and against the latter railroad itself. Its purpose was partly to enjoin the trustee from proceeding with his suit to foreclose the mortgage given to secure these bonds. The complainants nowhere allege that they ever made a demand on the board of directors or the stockholders of the S., G. & N. A. company to defend this suit, or that the board had refused to so defend; nor do they allege any excuse for not having so applied to the officials of the road, except they claim that such officials were in collusion with the parties seeking to foreclose the mortgage. This excuse is insufficient. The general rule of law is, that the holders of a majority of the stock shall control the corporation, and the minority cannot interfere therewith unless they show good reason for such interference. Among other

things, they should show that they made an earnest effort to obtain redress at the hands of the directors and shareholders of the corporation.

(*a*) This court is satisfied that, if the defences to the foreclosure of the mortgage have any merit in them, and complainants show any good reason to the directors why they should do so, they will make a de_ fence.

3. It appears that, of the stockholders of 400 shares, who are all the complainants, one of them owns nearly 300 shares, and the record discloses that he purchased them after the litigation began. The law seems to be, that a person who did not own stock at the time of the transactions complained of cannot complain or bring suit to have them declared illegal.

January 23, 1889.

Equity. Railroads. Corporations. Stock and stockholders. *Laches*. Acquiescence. *Ultra vires*. Remedies. Before Judge Marshall J. Clarke. Spalding county. At chambers, November 17, 1888.

Reported in the decision.

LAWTON & CUNNINGHAM, R. F. LYON and JOHN I. HALL, for plaintiff in error.

A. M. SPEER, CLIFFORD ANDERSON, E. W. HAMMOND and F. D. DISMUKE, *contra.*

SIMMONS, Justice.

It appears from the record in this case that, in the year 1871, the Savannah, Griffin & North Alabama Railroad Company made and executed a deed of trust or mortgage, on its railroad or other property, to William M. Wadley, president of the Central Railroad and Banking Company of Georgia, and his successors in office, and William B. Johnston, as trustees, to secure the principal and interest of $500,000 of bonds which said Savannah, Griffin & North Alabama Railroad Com-Company was about to issue. These bonds were

issued; and in the course of time the major part of them came into the possession of the Central Railroad and Banking Company. It further appears that the Savannah, Griffin & North Alabama Railroad Company had defaulted in the payment of interest on these bonds for several years. The deed of trust or mortgage contained a clause authorizing the trustees to foreclose the mortgage in case of such default. Wadley, one of the trustees named in the deed, died, and Alexander, the plaintiff in error here, became his successor as president of said Central Railroad and Banking Company, and his successor in this trust, under the terms of the mortgage. In 1887, he and Johnston, the other trustee, filed their bill to foreclose this mortgage. Johnston died pending the suit, and Alexander thus became the sole complainant. After the appearance term of the case, and before the trial term, Searcy and others, as stockholders of the Savannah, Griffin & North Alabama Railroad Company, filed their bill against said Alexander, trustee, the Savannah, Griffin & North Alabama Railroad Company, and the Central Railroad and Banking Company, wherein they allege that they are stockholders of the Savannah, Griffin & North Alabama Railroad Company; that they own about 400 shares of the capital stock thereof; and that the Central Railroad and Banking Company owns a majority of the stock of said Savannah, Griffin & North Alabama Railroad Company, and likewise the bonds issued by said company as aforesaid. They further allege that, by reason of the Central's said ownership of a majority of the stock, it has had the control of the Savannah, Griffin & North Alabama railroad since 1872, and by reason of having such control, has placed its own directors on the board of directors of the Savannah, Griffin & North Alabama Railroad Company, and that it has purposely mis-

managed said Savannah, Griffin & North Alabama rail-
road, by cutting off its through freights and sending
them over the Atlanta & West Point railroad, a road in
which the Central also had an interest; by building a
depot in the town of Carrollton, much more costly and
extensive than the business of the road required; and
by placing the net income earned by the Savannah,
Griffin & North Alabama railroad upon its road-bed in
the way of improvements; all of which has greatly
injured and damaged the stockholders of the said Sa-
vannah, Griffin & North Alabama Railroad Company.
They also allege that the bonds of the Savannah, Griffin
& North Alabama Railroad Company were purchased
below par by the Macon & Western Railroad Company,
(which, by an act of the legislature, was afterwards con-
solidated with the Central Railroad & Banking Com-
pany,) which latter company now owns said bonds, and
is seeking to recover the full value thereof and interest
thereon, besides interest on the unpaid coupons.

They allege that the purchase of these bonds at sixty-
five or seventy cents on the dollar was a usurious trans-
action, and that the Central Railroad and Banking Com-
pany ought not to be allowed to recover the face value
thereof and interest on the same; that if it can recover
at all, it can only be allowed to recover the amount it
paid for the bonds, with the legal interest on that
amount. They further allege that neither the said
Macon and Western Railroad Company, nor the Cen-
tral, had the power, under their charters, to own or pur-
chase the stock of the Savannah, Griffin and North
Alabama Railroad Company; that the purchase of said
stock was *ultra vires* and void. They also allege that
the president of the Central Railroad and Banking
Company was a director of the Savannah, Griffin and
North Alabama Railroad Company, and was president

of the former company when the stock of the Savannah, Griffin and North Alabama Railroad Company was sold to it, and that this rendered the contract illegal and void. They prayed for an accounting between the Central and the Savannah, Griffin and North Alabama Railroad Company as to the damages incurred by the latter road by reason of the mismanagement thereof; insisting that when such damages were assessed, they should be credited upon the bonds held by the Central, and that such damages would be sufficient to pay off all the legal interest due on said bonds. They also prayed that an accounting be had as to the usury sought to be collected by the Central, and that the usury be deducted from said bonds, and that the Central be enjoined from disposing of any of said bonds. They prayed the appointment of a receiver to take charge of and manage said Savannah, Griffin and North Alabama railroad, under the direction of the court. They further prayer that the ownership of the stock of the Savannah, Griffin and North Alabama Railroad Company by the Central Railroad and Banking Company be decreed to be *ultra vires* and null and void.

Alexander, the trustee, answered said bill, but it is unnecessary to notice his answer, as it is not material to the decision of this case.

The Central Railroad and Banking Company showed cause against the granting of the injunction, by demurrer and answer. The 2d and 3d grounds of the demurrer are as follows:

"Second. Because the complainants do not show by their bill any right to prosecute this suit on behalf of the minority stockholders, it not being alleged that the directors of the Savannah, Griffin and North Alabama railroad have ever been requested to make such defence, or that they have ever refused or declined to make such defence.

Alexander, trustee, *et al. vs.* Searcy *et al.*

"Third. Because the complainants, if they have any cause of complaint or grounds of equity, have not made such complaint within a reasonable time, but have, after full knowledge of all such grounds of complaint, or a full opportunity to acquire notice thereof, acquiesced in such acts of alleged error for more than four years."

The answer shows that the complainant Searcy owns 296 shares of the capital stock of the Savannah, Griffin and North Alabama Railroad Company, which were acquired by him since the beginning of this litigation; and that the other complainants owned their stock from ten to fifteen years before the beginning of the litigation. It denies all the charges made in the bill as to the mismanagement of the road, and insists that the road was managed according to the best judgment of the officers and board of directors thereof. It admits owning the stock and bonds of said railroad, and alleges that the purchase thereof was made by the board of directors of the Central with the full knowledge of all the stockholders of the Savannah, Griffin and North Alabama Railroad Company; that the matter was laid before said stockholders by the president of their company, and that by a vote of said stockholders they authorized their said president to sell said bonds and stock to the Central Railroad and Banking Company, upon certain conditions named in the resolution. The answer also goes into a detailed account of the management of the Savannah, Griffin and North Alabama railroad, giving the facts as to its management, and the earnings of the road year by year. It denies that there was any usury in the transaction of the purchase of the bonds, claiming that it did not lend any money to the Savannah, Griffin and North Alabama Railroad Company; that the bonds were purchased by it in open

Alexander, trustee, *et al. vs.* Searcy *et al.*

market, and the full market price paid therefor. Under the view we take of this case, it is unnecessary to go further into the details of the answer.

On the hearing, the chancellor granted the injunction prayed for, and appointed a receiver to take charge of the Savannah, Griffin and North Alabama railroad. To this decision, Alexander, the trustee, the Savannah, Griffin and North Alabama Railroad Company, and the Central Railroad and Banking Company excepted.

1. We think the court erred in granting this injunction and appointing a receiver. The record shows that the alleged illegal transactions complained of by these minority stockholders commenced in 1870, and continued from that time up to the filing of this bill. A part of this stock was purchased by the Macon & Western Railroad Company prior to 1870. Reports were made of the sale by the president of the Savannah, Griffin & North Alabama Railroad Company to the board of directors and the stockholders thereof. The purchase by the Central Railroad and Banking Company was made subsequently, and of this purchase the board of directors and the stockholders of the Savannah, Griffin & North Alabama Railroad Company were also notified at the annual meetings of the stockholders. The transfers of the stock to the Macon & Western Railroad Company and the Central Railroad and Banking Company were made on the books of the company, to which every stockholder had access. This stock was voted at the annual meetings by the Macon & Western Railroad Company, and when the Macon & Western was consolidated with the Central, the same stock and other stock purchased by the Central was voted at every annual meeting by the Central; so that there can be no doubt that each and every stockholder of the Savannah, Griffin & North Alabama Railroad Company had full

knowledge that the Central Railroad and Banking Company owned the stock, and that it voted it at every meeting of the stockholders. The exercise of this right commenced on the part of the Central as early as the year 1873, and from that time to November, 1887, it claimed and exercised the right to vote this stock. The Macon & Western Railroad Company and the Central Railroad and Banking Company have expended large sums of money in building and equipping the Savannah, Griffin & North Alabama railroad. Yet these stockholders, at each meeting, when these facts were laid before them, kept silent. They made no objection to receiving this money from the Macon & Western Railroad Company and the Central Railroad and Banking Company; but agreed in every instance to accept their money. They stood by and saw the Central expend large sums in building and equipping this road, and yet not a word of objection did they utter. They stood by and saw this stock issued to the Macon & Western Railroad Company and to the Central, in payment of large sums of money advanced to them by these companies, and not only stood by and saw this done, but helped by their votes to do it; because, as said before, it was all done by resolution of the stockholders at their meetings. In our opinion, whether the Macon & Western, or the Central after the Macon & Western was consolidated with it, had power and authority under their charters, or not, to purchase and own stock in another railroad company, these stockholders cannot now complain. They have acquiesced in this illegal act, if it is illegal, in some instances for seven years, and in others for fifteen, the stock having been purchased at divers times from 1869 to 1880; they have received the money of these corporations; and after acquiescence for that length of time, with a full knowledge of the facts, equity will

not allow them to complain. This is a familiar doctrine in courts of equity. Cook, in his work on Stockholders, §686, says : " After a stockholder has knowledge, or is chargeable with knowledge, of an *ultra vires*, fraudulent, or negligent act of the directors, he must institute his suit, if at all, within a reasonable time thereafter. As to what will constitute a reasonable time depends on the circumstances of the case. If it is evident that the stockholder is waiting to see whether the unauthorized act will be profitable to the corporation, the court will refuse to grant him any relief. So also if the stockholder, after a full knowledge of the facts, stands by and allows large operations to be completed, or money expended, or alterations to be made, before he brings suit, he is guilty of *laches*, and his remedy is barred. In like manner, where the stockholder, with full knowledge, has accepted the benefit of the act, he cannot complain thereafter. And in general, where it is clear that the stockholder had a full knowledge of all the essential facts of an act which he might bring a suit to remedy, but which, for an unreasonable length of time, he fails to object to by a bill in equity, he will be held guilty of *laches*, and his right to institute the suit is barred."

In Taylor *vs.* South, etc. Railway Company, 4 Woods (U. S.), 575, the court says : "A stockholder of a corporation will not be allowed, after a reasonable time, to disturb and rescind a contract made by his corporation, after the same has been fully executed, on the ground that it is *ultra vires* and in excess of the corporate powers granted by the charter of the corporation."

In the case of Houldsworth *vs.* Evans, L. R., 3 H. of L. 263, (1868) it is said : "Where the summary interference of this court is invoked in cases of this nature, it must be invoked promptly. Parties who have lain by and permitted a large expenditure to be made, in

contravention of the rights for which they contend, cannot call upon this court for its summary interference."

In Stewart *vs.* Erie, etc. Transportation Company, 17 Minn. 372, the court said : "If a stockholder assents to acts *ultra vires*, or although not originally or expressly assenting, has for an unreasonable time acquiesced and has permitted them to go unquestioned, so that other parties who have acted upon the faith of them (as, for instance, by making large expenditures of money) would suffer great injury from their repudiation, a court of equity would not easily be induced to grant relief at the instance of such stockholder."

In the case of Peabody *vs.* Flint, 88 Mass. 54, a delay of three and a half years was held to be a bar. In the case of Gregory *vs.* Patchett, 33 Beav. 595, six years were held to be a bar. In the case of Ashurst's Appeal, 60 Penn. St. 290, seven years were held to be a bar. In the case of Dimpfell *vs.* Ohio & Miss. R. R. Co., 110 U. S. Rep. 209, three years and eight months were held to be a bar. The general rule which we deduce from these authorities and others which we might cite is, that while a minority of the stockholders of a corporation may maintain a bill in equity in behalf of themselves and other stockholders, for fraud, conspiracy or acts *ultra vires*, against a corporation, its officers and others who participate therein when the minority stockholders have been injured or damaged by said acts, they must act promptly and not wait an unreasonable length of time. If they postpone their complaint for an unreasonable time, they forfeit their right to equitable relief. "Nothing will call a court of equity into activity but conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing." Smith *vs.* Clay, 3 Bro. C. C. 639, note.

This view is not in conflict with the cases of the *Cen-*

.tral *Railroad vs. Collins*, 40 *Ga.* 582, and *Hazlehurst vs. The Savannah, Griffin & North Alabama Railroad Company*, 43 *Ga.* 13, cited in the argument, as the stockholders in those cases filed their bills promptly.

But it is alleged by counsel for the defendants in error that no amount of acquiescence on the part of the stockholders will make an act legal which is illegal; in other words, that no amount of acquiescence on the part of the stockholders would give power to the Central Railroad and Banking Company to purchase and own stock in another railroad, if the law did not authorize it. We concede that. But in our opinion, it does not follow that, because a railroad has no power to purchase or own stock in another railroad company, a stockholder who has acquiesced therein for fifteen years should have a right to object. It may be true, and doubtless is, that no assent or acquiescence of the stockholders can validate such an act; but it is a different question whether, after such a long acquiescence, the stockholder may take advantage of the invalidity of such acts. Cook on the Law of Stock and Stockholders, §683. The act of purchasing and owning and voting stock in one railroad company by another railroad company may be *ultra vires* so far as the public are concerned; but we do not think that a stockholder, who has acquiesced for fifteen years, and who has received money from the corporation by reason of the illegal act, should be allowed to make that question. His acquiescence does not render valid the illegal act of the corporation, but will prevent him from taking advantage of its invalidity. The public or the State is not thus bound. The State, through its proper officer, may, at any time, commence proceedings to prevent it or to declare it *ultra vires* and illegal.

2. We think the chancellor erred in granting this injunction, for another reason. This is a bill filed by a

few persons, owning about 400 shares out of the 10,-000 shares constituting the capital stock of this company. The Central Railroad and Banking Company owns somewhat over 6,000 shares of the capital stock, and the remainder of the shares are owned by individuals. The general rule of law is, that the holders of a majority of the stock shall control the corporation, and the minority cannot interfere therewith unless they show some good reason for interference. These complainants nowhere allege in their bill that they ever made a demand on the board of directors to defend this suit, or that the board of directors had refused to defend it. Nowhere in their bill do they set up any excuse or reason for filing the same, except that they say they would have called on the officials in charge of the Savannah, Griffin & North Alabama railroad to make a defence to said foreclosure proceedings, but for the facts aforesaid, which show that they were in collusion with the parties seeking to foreclose the mortgage, and in order to make such defence, they would have to accuse themselves of misconduct and fraud on the rights of the complainants. They do not allege that they applied to the board of directors or to the stockholders, but that it was the officials of the road to whom they would have applied if they had not been in collusion with the Central Railroad and Banking Company. That is not sufficient, in our opinion. The rule is well-settled by a great number of adjudicated cases in the highest courts, among them in the able opinion of Mr. Justice Miller in Hawes *vs.* Oakland, 104 U. S. 450, where it is held that, before a minority of the stockholders can maintain a bill against the majority, there must be shown: 1, some action or threatened action of the directors or trustees which is beyond the authority conferred by the

charter, or the law under which the company was organized; or, 2, such a fraudulent transaction, completed or threatened by them, either among themselves or with some other party, or with shareholders, as will result in serious injury to the company or the other shareholders; or, 3, that the directors, or a majority of them, are acting for their own interests, in a manner destructive of the company or of the rights of the other shareholders; or, 4, that the majority of the stockholders are oppressively and illegally pursuing, in the name of the company, a course in violation of the rights of the other shareholders, which can only be restrained by a court of equity; and, 5, it must also be made to appear that the complainant made an earnest effort to obtain redress at the hands of the directors and shareholders of the corporation, etc. In the opinion of the court the learned justice says: "But, in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as

complainant desires on the part of the directors, and of
the shareholders when that is necessary, and the cause
of failure in these efforts, should be stated with par-
ticularity."

This case was cited and approved in Dimpfell· *vs.*
Ohio and Mississippi Railroad Company, 110 U. S. 209,
where Mr. Justice Field, in delivering the opinion of
the court, says: "A stockholder must make a better
showing of wrongs which he has suffered, and also of
efforts to obtain relief against them, before a court of
equity will interfere and set aside the transaction of a
railway company or of its directors. It is not enough
that there may be a doubt as to the authority of the
directors or as to the wisdom of their proceedings.
Grievances, real and substantial, must exist, and before
an individual stockholder can be heard, he must show,
in the language of this court, that 'he has exhausted all
the means within his reach to obtain, within the corpo-
ration itself, the redress of his grievances or action in
conformity to his wishes,' (citing Hawes *vs.* Oakland,
*supra.*) In that case the court added that the efforts to
induce such action as he desired on the part of the
directors, or of the stockholders when that was neces-
sary, and the cause of his failure, should be stated
with particularity in his bill of complaint, accom-
panied with an allegation that he was a stockholder at
the time of the transactions of which he complains, or
that his shares have devolved on him since by opera-
tion of law."

We have shown that no allegations of this sort were
made by the complainants in this case. As said before,
no request or demand was made of the directors, and
no reason is given why such demand was not made on
the directors. No reason was stated in this bill why
they should be entitled to file it, except that the officers

of the Savannah, Griffin and North Alabama Railroad Company were in collusion with the officers of the Central Railroad and Banking Company. It seems to us that if they had applied to men of such character and standing as those who constituted their board of directors, viz. John D. Stewart, U. B. Wilkinson, A. D. Freeman, W. W. Merrill, J. U. Horne, H. J. Sargent, W. W. Fitts and Arthur Hutchinson, and had even intimated wrongful and fraudulent acts on the part of the Central Railroad and Banking Company, and had asked them to investigate the matter, they would certainly have done so. But they fail to allege that they called on these men to do their duty as directors over this separate and independent organization, and simply allege, in effect, that they were mere puppets of the Central Railroad and Banking Company. We are satisfied that if these defences to the foreclosure of the mortgage have any merit in them, and these complainants show any good reason to the directors why they should do so, they will make a defence.

3. There is one other reason, to my mind, why these complainants should be held to strict allegations in their bill; and that is the fact, already stated, that out of the 10,000 shares of capital stock in this company, they own only about 400. The holders of between three and four thousand shares, who are not connected with the Central Railroad and Banking Company, as appears from this record, make no complaint against the foreclosure of the mortgage; and of the holders of these 400 shares who do make complaint, one of them owns nearly 300 shares; and the record discloses that he purchased them after this litigation began. The weight of authority seems to be that a person who did not own stock at the time of the transactions complained of, cannot complain or bring a suit to have them declared illegal. In

the case of Hawes *vs.* Oakland, *supra,* it is said that the bill must allege that the complainant was a shareholder at the time of the transaction of which he complains, or that his shares have devolved on him since by operation of law. And this is reiterated in Dimpfell *vs.* Ohio & Miss. R. R. Co., *supra,* in which case Mr. Justice Field says, in speaking of the complainant's efforts to induce the directors or stockholders of the corporation to begin suit: " The cause of his failure should be stated with particularity in his bill of complaint, accompanied with an allegation that he was a stockholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law." See *contra,* Wait on Insolvent Corporations, §628, and authorities there cited.

We therefore hold that these minority stockholders who filed this bill, not having applied to the directors of the railroad company, of which they are stockholders, nor given any reason for their failure to make this application to the directors or stockholders to defend these suits, cannot of their own motion make these defences, either on account of the mismanagement of the road, or on account of the usury in the transaction, if there be any usury.

Judgment reversed.