SOPHIE BERMAN AND OTHERS v. MINNEAPOLIS PHOTO ENGRAVING COMPANY AND OTHERS.[1]

November 14, 1919.

No. 21,434.

**Injunction pendente lite — review of order.**

1. Whether an injunction pendente lite shall be issued, rests so largely in the discretion of the trial court that this court will not interfere unless an abuse of such discretion be shown.

**Appeal and error — refusal of order — questions of fact.**

2. On an appeal from an order refusing an injunction pendente lite, the order must be taken as resolving against the appellant all questions of fact which the evidence leaves in doubt.

**Corporation — issue of stock — evidence insufficient.**

3. The evidence in support of plaintiff's contention that part of the capital stock in controversy was issued by the company without consideration, and that the other part was issued prematurely, is not sufficiently clear and certain to justify so holding as a matter of law.

**Same — meetings of directors — estoppel against stockholders.**

4. The stockholders having knowingly, for a period of more than two years, recognized the validity of meetings of the board of directors held without notice to an absent director, who in fact never acted as a director, are precluded from now asserting that such meetings were illegal for failure to give such notice.

**Estoppel against plaintiffs.**

5. Plaintiffs, having obtained their stock by subsequent purchase from two of the directors who attended the directors' meeting which authorized the issuance of the stock in controversy and who voted for the

[1]Reported in 174 N. W. 735.

resolution authorizing such issuance, are not in position to assert that such meeting was illegal.

Action in the district court for Hennepin county for the surrender to defendant corporation for cancelation, of five shares of capital stock, evidenced by certificates issued to defendant Hare, and to enjoin him from voting or selling the stock. From an order, Hale, J., discharging an order to show cause why an injunction should not be granted restraining defendant Hare from voting five shares of stock alleged to have been unlawfully issued to him, plaintiffs appealed. Affirmed.

*George B. Leonard* and *Maurice Rose,* for appellants.

*Charles F. Keyes,* for respondents.

TAYLOR, C.

This is an appeal by plaintiffs from an order refusing to issue an injunction pendente lite.

It is well settled that the issuance of such an injunction rests so largely in the discretion of the trial court that this court will interfere only where a clear abuse of such discretion is shown.

Plaintiffs brought the action to secure the cancelation of five shares of the capital stock of defendant company issued to defendant Hare, and to enjoin defendant Hare from disposing of or voting this stock. The temporary injunction was sought for the purpose of preventing defendant Hare from voting his stock at the approaching stockholders' meeting. The defendants include the present officers of the corporation and are in control of its affairs. If Hare is permitted to vote this stock they can retain such control. If he is not permitted to vote this stock plaintiffs have acquired sufficient stock to give them control. Plaintiffs base their claim solely on the assertion that this stock was illegally issued; they make no claim that the business of the company has been mismanaged in any respect except in the issuance of this stock.

For the purposes of this appeal the refusal of the court to grant the injunction must be taken as resolving against plaintiffs all questions of fact which the evidence leaves in doubt.

Thirty-six shares of the capital stock of the company of the par value of $100 per share were issued of which E. F. Gross, C. M. Arndt and G.

C. Willey each held ten shares, and J. R. Irrthum and Frank Maxson each held three shares. No other stock has been issued except the five shares now in controversy. Gross, Arndt, Willey and Irrthum composed the board of directors. Gross was president; Irrthum, vice president; Willey, secretary, and Arndt, treasurer.

Early in January, 1918, Gross, acting as general manager of the company, employed defendant Hare as business manager and he has performed the duties of that position ever since. In the summer and fall of 1918, he claimed the right to purchase some of the capital stock of the company on the ground that he had been promised that privilege by Gross and also by other officers of the company. He also made the claim that he was entitled to more salary than he had drawn from the company, and that this back salary should be applied as a payment on the stock. On November 4, 1918, directors Arndt and Willey were appointed a committee to take up the matter with Hare and arrange for the issuance of his stock. They reported to the board at a meeting held on January 14, 1919, to the effect that they had reached an understanding with Hare and had agreed to issue him five shares of stock, of which two and one-half shares were to be in lieu of his back salary, and two and one-half shares were to be paid for in weekly instalments, that ten dollars per week of his salary beginning with October 1, 1918, was to be applied on these instalments, and that the stock was to be issued when the two and one-half shares were paid for. Their action was unanimously approved and ratified by the board. Director Irrthum was not present at this meeting, but subsequently approved the action taken by an indorsement entered upon the record of the meeting.

On February 25, 1919, Gross and Arndt sold their stock of ten shares each to plaintiffs. It was transferred to plaintiffs on the books of the company on the following day, February 26, and on the same day the stock in controversy was issued to Hare.

Plaintiffs contend that Hare was not entitled to the back salary claimed, and that the two and one-half shares issued to him therefor were issued without consideration. They also contend that about thirty dollars of the purchase price of the other two and one-half shares remained unpaid at the time they were issued, and that these shares were prematurely issued for that reason. Passing other questions, which readily

suggest themselves, and assuming that the facts asserted, if established, would warrant the court in holding that the stock was illegally issued, it is sufficient to say that the evidence lacks the clearness and certainty necessary to justify holding as a matter of law that either of the above contentions has been established.

Plaintiff's principal contention, however, is that the directors' meeting of January 14, 1919, was illegal and the action taken thereat of no effect, for the reason that director Irrthum was not present and had not been notified of the meeting.

The business of the company was conducted in an informal manner. There were no by-laws, no regular or stated meetings of the board of directors, and no regulations for calling or giving notice of meetings of the board. Irrthum attended the annual meeting of the company held in March, 1916, and was elected a director and vice president. He seems to have been re-elected to these positions in 1917 and 1918. His business kept him out of the city most of the time. He testified that he never attended either a stockholders' or a directors' meeting after the annual meeting of 1916, never took any part in the business or affairs of the company, did not consider himself a director or act as such, and did not even know that he was elected a director in 1918. The other directors were engaged in the business of the company and managed its affairs as if they constituted the entire board and Irrthum were not a member of it. Whenever they desired to take official action they met on verbal notice and by mutual consent. Apparently no notice was ever given Irrthum of any of their meetings. From March, 1916, until plaintiffs became stockholders in February, 1919, the business of the company was conducted in this manner with the knowledge and acquiescence of all the stockholders and all the officers, and every stockholder who held stock during that period still acquiesces in the validity of such meetings and approves all acts taken at these meetings. Having knowingly recognized the validity of such meetings for more than two years, we think the stockholders are precluded from now attacking their validity on the ground that Irrthum took no part therein and had no notice thereof. See Dickinson v. Citizens Ice & Fuel Co. 139 Minn. 201, 165 N. W. 1056; Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co. 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. ed. 265.

Furthermore Gross and Arndt were both present and took an active part in the meeting in question, and both approved and voted for the resolution authorizing the issuance of the stock, and neither could now maintain a stockholder's suit to impeach the validity of his own acts. Plaintiffs are in no better position, for they have no interest in the company, except what they acquired by the sale and transfer to them of the stock of Gross and Arndt. As Gross and Arndt, if they had retained their stock, could not attack the validity of this meeting, neither can plaintiffs. Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 19 Ann. Cas. 74; Home Fire Insurance Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 60 L.R.A. 927, 108 Am. St. 716; Alexander v. Searcy, 81 Ga. 536, 8 S. E. 630, 12 Am. St. 337; Just v. Idaho Canal & Imp. Co. 16 Idaho, 639, 102 Pac. 381, 133 Am. St. 140. See note 97 Am. St. 51.

Order affirmed.