LAMAR *et al. vs.* THE LANIER HOUSE COMPANY *et al.*

When the testimony on the controlling issues involved in an application for injunction was conflicting, the discretion of the chancellor in granting or refusing the injunction prayed for will not be controlled.

(a.) Where a bill was filed by a minority of the stockholders of a corporation to enjoin the action of the majority in borrowing

---

*Contrast *Collier et al., ex'rs, vs. Simpson et al.,* 74 *Ga.,* 697.

money to improve the common property, and where there was no allegation that the directors had gone outside of the charter powers, but the bill was apparently an effort of the minority to have the courts intervene in respect to different views of policy among the stockholders in regard to their internal management of affairs within the limits of the charter, it would require a strong case to authorize such interference, if it could be done at all.

May 1, 1886.

Stock and Stockholders. Corporations. Equity. Injunction. Before Judge SIMMONS. Bibb County. At Chambers. March 13, 1886.

Henry J. Lamar *et al.* filed their bill against the Lanier House Company, T. J. Carling, H. R. Brown and T. Guernsey, alleging, in brief, as follows: The Lanier House Company was chartered in 1852, and its charter was amended in 1872. For a time it did a good paying business, but from various causes, its business has fallen off and it has ceased to be a profitable investment, has failed as a paying enterprise, and the hotel cannot be rented so as to pay expenses and realize any dividend. No dividends have been declared in many years, and there is a bonded debt of $10,000 and a floating debt of $1,000 outstanding, and there is no fund on hand to pay them. From its organization, the affairs of the corporation have been managed without salaries, except one of $300 to the secretary and treasurer. In December, 1885, Carling and Brown bought 490 shares of the stock, the whole amount being 768 shares, and thus obtained a majority of the stock at less than its par value. They transferred five shares to Guernsey to qualify him to be a director, and at a meeting of the stockholders, in which they held the majority of shares, they reduced the number of directors from five to three and elected themselves and Guernsey. Subsequently they elected Carling president and fixed his salary at $1,500, and Brown, secretary and treasurer, at a salary of $1,250. These salaries are out of proportion to the work to be performed and are unnecessary. Resolutions also were passed

v 76-41

to issue and sell $40,000 worth of additional bonds, secured by mortgage, and with the proceeds to pay off the old bonded debt and mortgage and largely improve the hotel building and property. Although some of the complainants were personally present or represented, none of them consented to this scheme of increasing salaries and indebtedness, but voted and protested against it. Such a scheme is not in accordance with the intent and design of the original projectors of the enterprise, which was to build and improve the hotel by actual *bona fide* subscriptions to stock, and not by incurring debts, and it is in violation of the legislative intent, as stated in the amended charter and of the action of the stockholders thereunder; it will burden the company with a debt far beyond its ability to pay, and will be ruinous to the property and the interest of the complainants therein. At best, the creation of a debt and expenditure of money will be a mere speculation, and if not successful, the loss will fall on the complainants and other stockholders, who, under the charter, are liable like special partners. Besides, the management of these funds will be in Carling and Brown, and the complainants are unwilling to trust them. Complainants know of no property which they have. The prayers were for injunction; that the property be sold and the debts paid, and the balance distributed; that the corporation be dissolved; and for subpœna and general relief.

The answer of the defendants denied most of the material allegations of the bill. Its substance was briefly as follows: They deny utterly all charges of fraud, or of any scheme for personal gain, or to endanger or injure the interest of the stockholders. The hotel is out of repair, and for that reason, difficulty arose about the rent. If put in good repair, it can be rented at $5,000 per annum, the former rent having been $3,600. The defendants purchased their stock in good faith, and paid $13,297.50 for it, being $27 per share of the par value of $30, and any damage to the stockholders generally would affect them like-

wise. .The resolution to reduce the number of directors from five to three was passed at a full meeting, and Carling, Brown and Guernsey were elected without a dissenting voice. The outstanding debt of $10,000 was for bonds. issued for the purpose of making improvements; there is no other debt. (The various meetings, with the actions thereat and the part some of the complainants took in them, are then set out in detail.) The final resolution as to the issue of the bonds was introduced by one Hertz, who was not under their control or connected with them. He also introduced a resolution that the president and the secretary and treasurer each be paid a salary of $1,250 for the year 1886 for personally overlooking and superintending the contemplated improvements. This salary was not to continue. longer than for that year. Guernsey's stock was not transferred to him for the purpose of qualifying him to act as a director, but he bought it in good faith and for value. They charge that the filing of this bill is a mere effort to force them to buy the complainants' stock. Insolvency of the company or the individual defendants was denied.

Affidavits in support of the original bill and answer were read.

The chancellor refused the injunction, and the complainants excepted.

LYON & GRESHAM, for plaintiffs in erro

DESSAU & BARTLETT, for defendants.

JACKSON, Chief Justice.

This is a bill brought by the minority of the stockholders against the action of the majority in borrowing money to improve the common property. Allegations are made by the complainants, and denied by the defendants, and the case is one making that conflict of facts which must be settled by the chancellor, and with which we do not interfere.

Besides, there is no. allegation that the directors have gone outside of their charter, but it seems to be an effort of the minority to have the courts to intervene in respect to different views of policy among the stockholders in regard to their internal management of affairs within the charter.

To say the least, it would require a strong case to authorize such interference, if it can be done at all. See Bailey *vs.* The Birkenhead, Lancashire, and Cheshire Junction Railway Company, 12 Beavan, 433, and Oglesby *vs.* Attrill, 105 U. S., 605, which appear to be very analogous to the case made here. However, we do not decide the point positively on the issue of the grant or refusal of this injunction, but put our affirmance of the chancellor on the right he has to exercise a sound discretion in the refusal of the writ on such contested and disputed issues as are here. Neither the directors nor the corporation appear to be insolvent, from all the facts, though the insolvency of the corporation is alleged but denied, and the denial appears to have the stronger support from the facts. The chancellor settled that with other contested issues.

Judgment affirmed.