## EMPIRE HOTEL COMPANY *et al. v.* MAIN.

1. Even if the directors of an insolvent corporation, after advancing money to it and accepting for the same preferred stock of the company, subsequently unlawfully cancelled this stock and issued to themselves promissory notes of the company for the amounts severally advanced by each, and sought to collect the same by suit, these facts are insufficient to authorize a court of equity, upon the petition of a stockholder, to appoint a receiver to take charge of the assets and franchises of the corporation. In such case, the plaintiff can be fully protected as to all of his rights in the premises, by a proper injunction, such as was granted in the present case, and to which there was no exception.

2. Where a receiver of the property of a corporation was improperly appointed. an order directing him to sell such property was necessarily erroneous.

March 16, 1896. Argued at the last term.

Petition for injunction, etc. Before Judge Milner. Whitfield county. December 21, 1895.

H. K. Main brought his petition for the appointment of a receiver to take charge of the affairs and property of the Empire Hotel Company; and for injunction restraining the directors and common stockholders of the company from interfering with its affairs and from prosecuting any suit

against it; and for general relief. The company filed a demurrer and answer; whereupon the plaintiff moved to amend by making parties defendant, T. R. Jones, R. I. Peak, S. E. Berry, A. W. Lynn, G. W. Hamilton, J. W. Barrett and W. H. Tibbs; and by making further allegations. To the allowance of this amendment defendant objected, on the ground that there was nothing to amend by, no case for any relief being made in the petition. The objection was overruled. After a hearing, the court granted the prayer of the petition, and appointed a permanent receiver for the property of the company. On the same day, counsel for the company presented to the court a written request of T. R. Jones, R. I. Peak, G. W. Hamilton, W. H. Tibbs, S. E. Berry, F. T. Hardwick for C. L. Hardwick & Co., and J. W. Barrett, who owned about all the debts of the company, except that owned by G. W. Oglesby, requesting the court, if a receiver was appointed, to appoint A. W. Lynn, the president of the company. This request was overruled, and Joseph Bogle was appointed receiver. To each of the foregoing rulings the defendant company excepted. The court further ordered a sale of the property by the receiver, under certain directions. To this order the company excepted on the sole ground, that under the pleadings in this case no legal sale can be had, and that a sale so made would not convey the title to the property; stating that if under the pleadings and with the parties before the court such order could legally be made, and if at the sale so ordered a good title could be made to the purchaser, it would not except to the grant of the order.

The petition alleges the following: In 1890 the defendant corporation was formed for building and operating a hotel. A board of directors and officers were elected to manage its affairs, after which, with means wholly inadequate to carry out the scheme, the erection of the hotel was commenced in the city of Dalton. After purchasing a lot and commencing work, it soon became manifest that stock

sufficient had not been subscribed for and paid in to carry on the building to completion; the same being far in advance of the demands of such building at the time and place. To provide funds sufficient to erect the building and complete the enterprise, the directors, in pursuance of authority given them by the stockholders on September 2, 1890, passed the following resolution: "Resolved, that the company place upon the market twenty thousand dollars of preferred stock of the company, of the par value of one hundred dollars per share, to be sold at not less than par, to complete the hotel of the company and to furnish, if means enough be thus provided, and guarantee the payment from the income of the property of eight per cent. annually, payable first of January and July of each year, after paying for repairs, taxes and insurance. The control and management of the affairs of the company to remain with the common stockholders until there shall be a default of dividends for as much as three months; and upon this occurring, the control to pass into the hands of the preferred stockholders for management for both classes of stockholders; and in the event the latter control does not provide income sufficient to pay for repairs, taxes and insurance and the dividend herein provided for, in one year from the time they assume control, then, upon application of a majority in value of the common stockholders, the property shall be advertised for sale for cash upon terms and conditions named, and by the person named from among the common stockholders by said majority, and the proceeds of sale applied to the extinguishment of arrearages for expenses of sale, repairs, taxes and insurance, if any, and then the preferred stock with dividends on same at eight per cent. per annum, and the remainder to the common stock. The company reserving the right to retire the preferred stock at any time, and have the right to call for such outstanding certificates as they think proper." After issuing the preferred stock (the majority of which is now owned by plaintiff),

the directors, or a majority of them at a meeting held September 4, 1891, provided by resolution for the issuance of $7,000 of preferred stock second to the $20,000 already issued, there being seven present and participating in said meeting. Said stock was accordingly issued, and $1,000 was taken and paid for by each of the seven directors, the purpose being to provide funds sufficient to complete and furnish the hotel. In pursuance of this agreement, said directors each advanced $1,000, and in doing so, by their apparent patriotism induced some of the friends of the enterprise to loan the company money, and by these means the hotel was completed, but in so doing the corporation was rendered hopelessly insolvent, and still remains so, and a large floating debt was settled upon it. Afterwards these same directors, whether a majority of them or not plaintiff does not know, got together, and by an agreement among themselves surrendered said certificates of stock and had them cancelled, and in lieu thereof gave themselves notes for the amounts advanced, and to this extent are attempting to make themselves creditors of the corporation. Suit has been brought upon one of the notes thus obtained, and the holders of other such notes are threatening to sue, in hope that a judgment lien will thus be obtained, giving them priority, which was not thought of or contemplated when they advanced the money and agreed to take the preferred stock therefor. They are still the directors of the company. The transaction related was a fraud on the stockholders and on plaintiff, and shows that said directors are not fit to have the management of the affairs of the company. Plaintiff knew nothing of this transaction until quite recently; if he had known of the situation, he would not have put his money into the enterprise. The corporation is hopelessly insolvent; beside the $20,000 of preferred stock and the $7,000 alluded to in said transaction, it owes a floating debt of between $26,000 and $28,000, which is increasing daily; the income derived

from the hotel is not sufficient to pay its taxes or insurance and the interest on its floating debt. None of the dividends on the stock have been paid; and the property will never be able to earn sufficient to pay such dividends, or even the taxes, insurance and interest on the floating debt, to say nothing of needed repairs. On this account the property is depreciating in value, and ere long the accumulation of interest will consume it. Plaintiff's right under the resolution of September 2, 1890, to take control of the property, is cumulative; and if he should do so, it would but defer the evil day and saddle upon him a debt, as he could not control and manage the property so as to make it pay the charges mentioned in the resolution. At no time in the history of the enterprise has it been able to meet its obligations, but has been and is getting deeper and deeper into debt. Since the completion of the hotel, every effort to make it pay has resulted in disaster, not only to the company but to the tenants or landlords who have kept it, etc. The company has no charter power to convert the building to purposes other than a hotel; if it had, it could not do so for want of funds; but if the property passed to other hands free from debt, a portion of it might be used as a hotel and the remainder converted into offices, etc., and in this way it might be made profitable. By reason of the facts stated, the object for which the company was formed has not been attained and is impossible of attainment. Then follow allegations showing the amounts received for rentals to be not over $2,100 per annum, and the amount of fixed charges for taxes, insurance, and interest on floating debt, to be about $2,700 per annum, exclusive of interest on the preferred stock, which indebtedness is increasing; and that the scheme has been given a fair trial and has wholly failed. If plaintiff undertook the control and management of the property, he would be placed in the position of a trustee for the other parties at interest, and would incur expense which he might have to pay, as the resolution of the direc-

tors does not provide for the payment of any deficiency, and he would have no authority to make these expenses a first charge on the income of the property so as to relieve himself from their payment; whereas, if the court would appoint a receiver to execute this trust and take the place of plaintiff under this resolution, the court could direct how the property should be handled, and the payment of expenses that might arise in its management, thus administering the affairs of the corporation, requiring the receiver to give a bond and to so act under the mandate of the court as to protect the interests of all concerned. Said resolution is vague and uncertain, and does not say how the property should be handled, whether by a board of directors from the preferred stockholders or otherwise; for which reason it leaves in doubt what would be plaintiff's duty in the premises. G. W. Oglesby, who holds a note against the company for about $2,000 borrowed money and interest, was induced to loan it by the directors agreeing to take $1,000 each of preferred stock. T. R. Jones, who holds a note or notes amounting to $3,000, has sued upon said debt, the amount of the note for $1,000 being a part of the $7,000 for which preferred stock was or ought to have been issued, but for which notes were taken. By reason of these suits and the effort to get judgment liens on the property, and threats by other directors to bring suit, dissatisfaction and contention have arisen between Oglesby and the holders of said notes, and between the directors themselves. C. L. Hardwick & Co., who own or control a majority of the floating indebtedness, have threatened to ask the protection of a court of equity, and say they will do so before the parties suing and threatening to sue shall have a judgment lien. If this threat is carried out, the chances are that a great amount of litigation will spring up, causing great expense, worry and dissatisfaction in the present management of the property. The directors own a majority of the common stock and can perpetuate themselves in power. In issuing

the notes covering the $7,000, they made themselves adversaries of the company, and are not in position to act for its best interest. To defend the suits brought by themselves and others against the property would be contrary to their individual interests. If the preferred stockholders should take control, the property at the expiration of twelve months would fall into the hands of these same directors, with the same conflict of interest existing.

The amendment to the petition, beside making parties as before stated, changed the date alleged on which plaintiff claimed that the directors provided by resolution for issuing $7,000 additional preferred stock, from September 4 to July 8, 1891. He further alleged, that an agreement for the sale of the property, set up in the answer, was *ultra vires* and void, and that none of the signers of the agreement has any authority to bring the property to sale. He prayed, that such sale be enjoined, and that the seven directors be enjoined from prosecuting suits on the notes taken in lieu of preferred stock.

It is unnecessary, for an understanding of the rulings here made, to set out the allegations of the answer, or the evidence adduced at the hearing.

*R. J. & J. McCamy* and *Jones & Martin*, for plaintiffs in error. *C. B. Reynolds, Maddox & Starr* and *King & Spalding*, contra.

LUMPKIN, Justice.

The facts of this case are numerous and somewhat complicated, and in the argument before this court quite a number of legal questions were presented. However, as the case, in our judgment, should have been made to turn upon the controlling propositions announced in the first headnote, we shall limit our remarks accordingly.

It was charged that the directors, after advancing money to the hotel company, and accepting for the same preferred stock of the corporation, subsequently unlawfully

cancelled this stock, issued to themselves promissory notes of the company in lieu thereof, and were seeking to collect the same by suit.. It is fair to say, in this connection, that these directors introduced evidence strongly tending to show that their conduct in the premises was neither unlawful nor fraudulent, but was fully warranted by the existing facts. Upon the assumption, nevertheless, that it was not, we do not think, in view of the prayers of the petition, that a receiver should have been appointed. In our opinion, the injunction granted by the judge, and to which there was no exception, gave to the plaintiff all the relief to which he was entitled under the prayers of his petition. Whatever may be the rights of stockholders in an insolvent business corporation whose affairs manifestly cannot be profitably conducted, with reference to the institution of equitable proceedings for the appointment of a receiver to be charged with the duty of winding up the business of the corporation and administering its assets, such a case is not presented by the petition filed in the proceeding with which we are now dealing. While the plaintiff's petition contains a recital of facts which might have authorized relief upon the line just indicated, and while much evidence was introduced in support thereof, he prays in his petition for no relief other than the appointment of a receiver to take charge of the affairs and property of the company, for an injunction restraining the directors and common stockholders from interfering with its affairs or prosecuting suits against it, and for "general relief." There is no prayer whatever for administration, for a sale of the property, or for a distribution of its assets; much less a prayer looking to the dissolution of the corporation, on the ground that its business cannot longer be profitably conducted nor the purposes for which it was chartered successfully carried into effect. A prayer for general relief covers much, but it can hardly be extended so as to authorize relief of an entirely independent nature from that specifically prayed for and form-

ing the basis upon which the plaintiff's petition was framed. Reduced to its last analysis, the petition is simply an attempt to place the affairs and property of the hotel company in the hands of a receiver for no other reason than that its directors have been guilty of misfeasance or malfeasance in the performance of their corporate duties. The appointment of a receiver for this purpose and on this ground is not allowable. "The law is well settled that the courts have no power to remove corporate officers. . . It is also well established that a court of equity cannot practically remove corporate officers by enjoining them from performing any of their customary duties, and by appointing a receiver to manage the corporate affairs." 2 Cook on Stock & Stockholders & Corp. Law, §746. "A receiver will not be appointed in a suit by a stockholder to remedy the frauds or *ultra vires* acts of the directors or of the corporation itself. . . . Other remedies will be applied." *Ibid.* §826. And to the same effect see High on Receivers, §§287, 288. It is obvious that the remedy of injunction will generally, if not in every instance, afford ample protection to a stockholder as against mismanagement of the corporation's affairs by its directors or other officers. Such relief was granted in the present case; and, as above intimated, would seem to be entirely adequate in preserving the plaintiff's rights in the premises.

The appointment of a receiver being erroneous, it follows that the order directing him to sell the property of the hotel company cannot be sustained.        *Judgment reversed.*