## BARTOW LUMBER COMPANY et al. v. ENWRIGHT.

1. The internal management of a corporation will not be interfered with by the court, at the instance of a minority stockholder, unless the majority stockholders are acting without the charter powers, or a strong case of mismanagement, or fraud, is shown.

2. Under the evidence in this case, it was error to grant an injunction and appoint a receiver.

Argued July 27,—Decided August 17, 1908.

Injunction and receiver. Before Judge Fite. Bartow superior court. June 29, 1908.

F. H. Enwright filed an equitable petition against the Bartow Lumber Company and seven named individuals, the pertinent allegations of which are as follows: The defendant company is a corporation, and the plaintiff and the seven individual defendants are its directors. Plaintiff has been its general manager since its organization, but has recently been informed that said directors, or some of them, have requested his resignation as such. The corporate stock of the company consists of 50 shares, by mutual consent each subscriber paying $3,478.29 per share, making the aggregate capital $173,914.64. Petitioner is the equitable owner of 4 shares and the legal owner of 1 share, but with restrictions on the right to vote the same. The company began sawing lumber in June, 1907, and continued to do so until Nov.——, 1907, when by order of Peter Kuntz Jr., its president, all operations were suspended. Prior to such suspension the company had logs deposited on its premises and on line of railway, aggregating about 2,500,000 feet of timber, to be scaled and sawed. Said logs are rapidly deteriorating in value, and, unless sawed into lumber immediately, will soon be a total loss. "Petitioner as general manager and as a director and equitable stockholder has for the past several months been demanding of the president and of the directors aforesaid that said plant be operated, at least to the extent of sawing up said logs into lumber and saving the same from utter destruction and the stockholders from loss." Said president and directors have ignored this demand and still fail and refuse to start the plant or saw said logs, or to do anything to protect them from destruction. The logs represent an investment of $10,000; it would cost about $3.00 per 1,000 feet additional to saw them into lumber, which would yield about 3,000,000 feet, worth in the market

about $30,000. On January 5, 1908, the directors created Peter Kuntz managing director, with all the powers of said board. He refuses to begin operating said plant or to have said logs sawed into lumber. The immediate necessity of sawing the logs into lumber is such as not to permit any further delay in attempting to secure action by the stockholders or directors; and he avers, on information and belief, that any such attempt would be unavailing on account of the influence exerted by Peter Kuntz and associates over them. The refusal of the defendants to cut the logs into lumber is inexcusable waste and will cause irreparable damage to the stockholders. In an amendment to the petition additional allegations of the same nature were made; and it was charged, on information and belief, that Peter Kuntz was guilty of fraud in connection with sale of the output of the plant. The pleadings were read as evidence, but the verification thereof was that petitioner believed to be true the matters therein averred on information and belief; and as there was no evidence whatever adduced on the hearing to substantiate the charges of fraud set forth in the amendment, it is unnecessary to further state the allegations with respect thereto which it contained, or the prayers for relief based on such charges.

The following is a summarized statement of the prayers contained in the original petition: That a receiver be appointed to take charge of all the property and assets of the defendant company, with authority to put the plant in immediate operation and to proceed at once to saw the logs into lumber and sell the same as fast as a market therefor can be found, the proceeds to be disposed of by the court in paying the debts of the company, or otherwise disposed of for the best interests of the stockholders; that the receiver be authorized by the court to issue receiver's certificates to an amount not to exceed $10,000, to be used in operating the plant until the logs were sawed and sold, the receiver to exercise his discretion as to number and amount of certificates within the limit named; that the defendants be restrained and enjoined from interfering with said receiver in the operation of the plant during the receivership; and that the receiver have authority to employ such manager, employees, and laborers as may be necessary to conduct the plant; and for general relief.

The defendant demurred to the original petition on the ground,

among others, that the conditions precedent to equitable relief of a minority stockholder, prescribed in the Civil Code, §1860, had not been met, and that the allegations of the petition did not entitle the plaintiff to any relief. It also filed an answer, in which it set up as a defense the contention that the financial situation, and resultant stagnancy in the lumber market with respect to the kind of lumber manufactured by it, rendered it impossible to operate its mill except at a loss; that it would cost about $8 per 1,000 feet to cut and saw the logs which it had on hand, and that the lumber thus produced would not bring more than $7 per 1,000 feet, entailing an additional loss of $1 per 1,000 feet; that under these conditions it was not good business policy to cut up said logs, and on this subject the opinion of the directors stood seven to one. It denied that in so deciding its directors were actuated by any motive except an honest effort to protect its interests and the interests of its stockholders; and alleged that it was amply solvent and stood ready to pay any obligations it might owe. It asked the court to dissolve the injunction heretofore granted and dismiss the receiver. The pleadings contained other allegations which it is not material to set forth.

The petition was presented to the judge on June 8; whereupon he passed an order appointing a receiver to take charge of all the property of the defendant company; the order of appointment giving him practically all the powers sought in the petition, including the authority to issue and sell receiver's certificates as prayed, and further directing that he make report on June 11, 1908, as to the best ways and means of proceeding with the operation of the plant. The court granted a temporary restraining order, and also issued a rule nisi requiring the defendants to show cause, June 29, why the receiver should not be made permanent and the injunction continued until final trial of the case. On June 10, the receiver filed a report making many recommendations, among which were that he be given authority to put the plant in operation and saw and sell lumber, stating that money would be needed for the purpose; whereupon the court approved this report and ordered the defendant to show cause, on June 13, why the receiver should not be authorized to issue $5,000 of receiver's certificates, to become a first lien on its property, in order to carry out the receiver's recommendations. The defendant filed a re-

sponse to this order to show cause, setting up, among other things, that the proposed action was unlawful, and that any interference with the internal management of the corporation affairs was unwarranted under the facts presented by the petition. The defendant also, on June 13, filed a motion to dissolve the temporary restraining order and dismiss the receiver. The court, on June 13, granted an order authorizing the issuance of receiver's certificates as prayed, and set the hearing on the motion to dissolve the restraining order for June 23, and then postponed the hearing thereof to June 29, the date set for the interlocutory hearing by the order on the original petition; at which time a full hearing was had, and the court entered an order continuing the receivership and injunction in force, and authorized the receiver to issue $5,000 of receiver's certificates and dispose of the same in the payment for labor and supplies, or in obtaining money with which to operate the plant, including the commissary, and to cut the logs on the premises of the defendant company and sell the lumber. To the orders of June 8 and 13 the defendant filed exceptions pendente lite; and to the order of June 29 it entered a fast bill of exceptions to this court.

Citations from the briefs (omitting those appearing in the opinion, infra): 4 Thomp. Corp. §§4483, 4487, 4504, and cit.; 5 Ib. §§6826, 6842; 105 U. S. 609; 187 U. S. 455; 109 Fed. 104; 125 Wis. 651 (104 N. W. 985); 116 Fed. 785; 64 N. J. Eq. 807; 7 C. C. A. 412 (58 Fed. 644); 78 Md. 308 (28 Atl. 619); 149 Mass. 471 (21 N. E. 878); 123 N. Y. 91 (25 N. E. 201); 143 Ill. 197 (32 N. E. 420); 3 Pom. Eq. Jur. §§1094, 1095; 5 Ib. §§111, 120; 2 Clark & Mar. Priv. Corp. 1675, 1701, 1703, 1713, and cit.; Mor. Corp. §§384, 386, 395 et seq.; Tay. Priv. Corp. §§559, 560; Tied. Corp. §395; High, Rec. (2d ed.) §117; Gluck & B. Rec. §9; Cook, Stock, 675; 10 Cyc. 694, 965 et seq.; 48 Am. St. R. 688, 691; 17 Am. D. 277; 59 U. S. 331, 380; 47 Fed. 15; 11 *Ga.* 556; 58 *Ga.* 474; 75 *Ga.* 40; 101 *Ga.* 202, 593; 111 *Ga.* 828; 11 *Ga.* 556; 83 *Ga.* 471; 94 *Ga.* 486; 95 *Ga.* 445; 129 *Ga.* 60; 7 Mich. Enc. Dig. 59.

*Smith, Hammond & Smith,* for plaintiffs in error.

*J. M. Neel, O. T. Peeples,* and *G. H. Aubrey,* contra.

HOLDEN, J. (After stating the facts.) It will not require any lengthy discussion of the evidence contained in the record, or the

law applicable to the case, to elucidate the conclusions we have reached therein. The plaintiff introduced, on the hearing, several affidavits, the trend of which was that there were cut and piled on the premises of the defendant company from two to three million feet of lumber in logs, which were ready to be sawed and had been since the mill ceased operations; that these logs had already greatly deteriorated in value and would continue rapidly to deteriorate, owing to the ravages of insects and the effect of the weather, and, if not promptly converted into lumber, would become a total loss. None of the testimony offered by the plaintiff gave any indication of fraudulent conduct on the part of any of the defendants in failing or refusing to operate the plant. On the other hand, the defendant introduced affidavits and documentary evidence to the effect that the majority directors were acting in the utmost good faith, in the conscientious belief that the stoppage of the plant was to the best interest of the company and its stockholders, and that it was closed down pursuant to the wishes of seven out of the eight directors of the company and the holders of nine tenths of the stock of the company. The managing director testified by affidavit that he had examined the logs on the ground, and was familiar with the necessary steps required to convert them into lumber and with the cost of so doing, and gave estimates showing that any attempt to manufacture such logs into lumber and sell the same would result in actual loss. The position thus assumed by the majority directors and stockholders as to the wisdom of shutting down the plant was supported by the affidavits of several experienced lumber dealers.

The right to control the affairs of a corporation is vested by law in its stockholders—those whose pecuniary gain is dependent upon its successful management. The majority stockholders, or the majority of the directors, when directors are chosen to act on behalf of the stockholders, have the right to determine the business policy of the corporation, and the minority must submit to their judgment in such matters, when exercised in good faith and not involving acts ultra vires, or in breach of trust. As was said by this court in *Hand* v. *Dexter*, 41 *Ga.* 454, 461, "The very foundation principle of a corporation is that the majority of its stockholders have the right to manage its affairs, so long as they keep within their charter rights." No principle of law is more firmly fixed in

our jurisprudence than the one which declares that the courts will not interfere in matters involving merely the judgment of the majority in exercising control over corporate affairs.   In 10 Cyc. 969, the rule is thus stated:  "The true distinction is between acts in excess of the powers of the directors and in breach of their trust, and acts which are within their powers and which merely involve an exercise of the discretion committed to them.   The rule here is that in the absence of usurpation, of fraud, or of gross negligence, courts of equity will not interfere at the suit of a dissatisfied minority, merely to overrule and control the discretion of the directors on questions of corporate management, policy or business, but will allow the majority to rule, and will leave the dissatisfied minority to redress their grievances through ordinary corporate methods."   Based on decisions in consonance with the doctrine as above announced, the codifiers of the code of this State have embodied these rules of law in two sections of our Civil Code, as follows:   § 1859.  "So long as the majority stockholders confine themselves within their charter powers, a court of equity will require a strong case of mismanagement, or fraud, before it will interfere in the internal management of the affairs of a corporation."  § 1860. "A minority stockholder may proceed in equity in behalf of himself and other stockholders for fraud, or acts ultra vires, against a corporation, its officers and those participating therein, when he and they are injured thereby.   But there must be shown—1.  Some action or threatened action of the directors beyond the charter powers; or, 2.   Such a fraudulent transaction completed or threatened, among themselves or shareholders or others, as will result in serious injury to the company or other shareholders; or, 3.   That a majority of the directors are acting in their own interest in a manner destructive of the company, or of the rights of other shareholders; or, 4.   That the majority stockholders are oppressively and illegally pursuing, in the name of the corporation, a course in violation of the rights of the shareholders, which can only be restrained by a court of equity; and it must also appear—5.   That petitioner has acted promptly; that he made an earnest effort to obtain redress at the hands of the directors and stockholders, or why it could not be done, or it was not reasonable to require it.   6. The petitioner must show that he was a shareholder at the time of the transaction of which he complains, or that his shares have de-

volved on him since by operation of law." See also *Lamar* v. *Lanier House Co.,* 76 *Ga.* 640; *Alexander* v. *Searcy,* 81 *Ga.* 536 (8 S. E. 630); *Empire Hotel Co.* v. *Main,* 98 *Ga.* 176 (25 S. E. 413); *Gibson* v. *Thornton,* 107 *Ga.* 545 (33 S. E. 895); *Reynolds* v. *Martin,* 116 *Ga.* 503 (42 S. E. 796).

The plaintiff's case rests upon the theory that the refusal of the defendants to cut the logs in question into lumber, under the circumstances, was an invasion of his rights as a minority stockholder, whereby he became entitled to the aid of a court of equity to enforce his own wishes in the premises. The theory of the defendants is that there was no ground for legal interference. Which contention is correct? The course adopted by the defendants, as shown by the evidence, was after a due investigation and consideration of the situation, and an inspection of the logs on hand and the making of estimates as to the cost of converting them into lumber and the price which could then be obtained for such lumber, had convinced them that the company as a corporation and themselves as stockholders would sustain financial loss should they attempt for the time being to operate the plant. We do not mean to intimate that cases might not arise in which it could be made apparent to a court that to permit an entire stoppage of operation by a corporation would be so oppressive and destructive of the interests of the corporation as to justify interference on behalf of the minority stockholders opposing such action; but under the rule announced in the Civil Code, §§ 1959, 1960, and the decisions of this court cited supra, it would require a strong case of mismanagement, or fraud, to warrant a court in so doing. The mere fact that the court may differ with the majority of the corporation as to the wisdom of the course which their judgment directs will not justify such interference. The late Justice Blatchford, when circuit judge, announced the proposition above stated, in Flagg *v.* Manhattan Railway, 10 Fed. 413, 432, in the following words: "No court will undertake to interfere with the exercise of such discretion and judgment, even though in the same facts it might have arrived, or may arrive, at a different conclusion, and even though the stockholders of the Metropolitan may have arrived at a different conclusion." Certainly no case warranting the court in depriving the majority of the directors of the defendant company of the control of its own affairs is presented in the record before

us. On the contrary, the evidence clearly presents a case in which the question of advisability of operating the plant was one solely to be determined by an exercise of judgment, and the decision of this question was the rightful prerogative of the majority in control of the affairs of the corporation. We think the court committed error in granting the injunction and appointing the receiver, and in not revoking the previous orders in the case; and the judgment is                    *Reversed. All the Justices concur.*