## ANDERSON *v.* GOODWIN.

1. An heir at law who knows that a private sale of certain property of a decedent is sought to be made, and who takes part in the accomplishment of such a result, and makes a quitclaim deed in order to effectuate that purpose, is in no position to invoke equitable relief to set aside a sale so made, on the ground that it is a private sale and not a public administrator's sale.

2. Where partners own real estate as tenants in common, and one of them dies, the others as surviving partners can not convey a good title to his interest.

3. A power of attorney, unless coupled with an interest, terminates upon the death of the maker.

4. If it was sought to attack the action of a person signing a deed as an attorney in fact, it should have been alleged either that there was such a power of attorney, or that there was not; and if there was such a power, it should have been described with reasonable certainty, and the grounds of its invalidity should have been stated.　This not being done, and no sufficient legal reason being stated for the failure, mere general references to the fact that the person did act under a power do not constitute any sufficient attack upon it.

5. The general rule is, that, if there is administration on the estate of a decedent, the right to recover possession of property forming part of the estate is in the administrator, and an heir at law can not bring suit unless the administrator consents thereto.　But if an administrator commits a fraud upon the estate, or colludes with others to do so, this rule would not prevent the heirs from bringing an equitable action

against such administrator and the person charged to be in collusion with him, for the purpose of protecting the estate.

6. If all the heirs made quitclaim deeds, covering their respective interests in real estate of the decedent, to a purchaser from the administrators, and one of them claimed a right to set aside or cancel the deed made by him, on the ground that it was unlawfully delivered, this would not authorize him to proceed to cancel the entire transaction and compel the whole property to be redelivered to the administrator for administration. He could proceed only for the protection of his own interest, and to the extent necessary for that purpose.

7. The allegation of the existence of some debts is too vague and indefinite to affect the question, and the case made is that of a single heir who desires to set aside a sale and have the whole property returned to the administrators substantially for the benefit of all the heirs, in spite of the fact that they appear to have made quitclaim deeds to their interests and not to desire a restoration.

8. Mere general allegations of fraud in an equitable proceeding are insufficient. It is necessary that the plaintiff show by specification wherein the fraud consists.

9. If a deed to real estate is signed and delivered to a depositary as an escrow, or to a special agent, with authority to deliver it to the grantee only upon a certain condition, a delivery to such grantee without the happening of such condition would not be lawful.

10. A deed can not be delivered in escrow to the grantee therein or his attorney; but the allegations of the petition do not make a case of such delivery.

Submitted March 3,—Decided May 24, 1906.

Equitable petition. Before Judge Pendleton. Fulton superior court. May 10, 1905.

Anderson filed his equitable petition against John B. Goodwin, Henderson Hallman, E. C. Kontz, and J. W. Austin, alleging as follows: Plaintiff is a son and heir at law of James A. Anderson, who died intestate. Jennie J. Anderson and Paul W. Anderson were appointed administrators, and qualified as such. At the time of his death he was a member of the firm of Goodwin, Anderson & Hallman, two of the defendants being the other members. He and the defendants were owners in common of certain real estate described, he owning an undivided five twenty-fourths interest, the defendant Goodwin five twenty-fourths, the defendant Hallman one twelfth, and defendants Kontz and Austin each a fourth. The value of the decedent's interest was five thousand dollars. On or about August 3, 1904, Goodwin & Hallman, as surviving partners and attorneys in fact, executed a conveyance to the defend-

ants Kontz and Austin, covering the five twenty-fourths interest which he had owned in his lifetime, for a consideration which appeared in the conveyance as $750. This sale was made without any advertisement. Plaintiff had no knowledge of the transaction until recently, and he obtained this from the public record of deeds. Sometime prior to August 3, 1904, the defendant Hallman stated to plaintiff that he wanted a quitclaim deed from the plaintiff and other heirs, to be used in the event a purchaser for said property could or should be found. At that time three of the heirs were absent from the city of Atlanta, and three remained there. Plaintiff asked some question concerning the execution of the deed, and Hallman replied, it was just a formality, that he wanted to be ready, in the event a purchaser could be found, to make a sale of the property, so that he would not be delayed in having to secure quitclaim deeds of the heirs of the deceased. Plaintiff agreed with Hallman to execute such a deed, upon condition that it should be held by the latter for the purpose stated by him, and upon the further condition that there should be no sale of the property or delivery of said quitclaim deed until plaintiff had been notified thereof and acquainted with the price to be paid therefor. "At the time of the execution of said deed by petitioner he did not take note of the names of the grantees therein, and does not know that it contained at that time the names of the grantees. Petitioner alleges that there was no consideration, other than hereinbefore stated, accruing to petitioner, the recital in said deed that five dollars was paid, etc., being a mere formal recital." A short time afterward plaintiff asked Hallman if a purchaser had been secured, and, receiving a negative reply, asked for a return of the deed. Hallman promised to make such return, but did not do so. Plaintiff asked for a return of the deed on a number of occasions, but it was refused. In fact the quitclaim deed was delivered to Kontz and Austin, "who appear to be the grantees therein." The delivery of the deed was illegal, and it was the duty of Hallman to have held it as an escrow, to notify plaintiff of any purpose to use it or to deliver it. It has been put on record. The conveyance made by Goodwin & Hallman, as surviving partners and attorneys in fact, of the interest in realty belonging to the plaintiff's father was illegal. The consideration of $750 was inadequate. Plaintiff's father left certain debts due. There are six heirs. Admin-

istration was had, and all the property should be administered according to law, and an effort to divert any of the property or assets of the estate is an effort against the creditors and heirs at law. The firm of Goodwin & Hallman are counsel for the administratrix and administrator, and seem to be in complete control of the assets of the decedent. The facts of the attempted sale of realty were learned by plaintiff from the records of the county, after repeated efforts to obtain a statement from the attorneys had failed. "Your petitioner alleges that each and all of the defendants were and are aware of the illegal and fraudulent course which has been pursued in an effort to divert from the lawful channel of a regular administration a large and valuable portion of the estate of your petitioner's father; and that each and every one of the defendants was and is a party thereto." The prayers were, for a cancellation of the conveyance by Goodwin & Hallman, as surviving partners and attorneys in fact of the decedent; for a cancellation of the quitclaim deed made by the plaintiff; that the court direct that the interest of the decedent be returned to the hands of the administrators, to be regularly and legally administered according to law; and for general relief.

General and special demurrers were filed. One of the grounds of the special demurrer attacked the allegation that all of the defendants "are aware of the illegal and fraudulent course which has been pursued," etc., and were parties thereto. The ground of demurrer was that this was loose, vague, and indefinite, and that no facts in support of it were alleged in this paragraph or elsewhere. An amendment was offered by the plaintiff, which alleged, in brief, as follows: Goodwin & Hallman advised the representatives of the estate to permit, assent to, and approve the illegal sale of the lands complained of. Kontz and Austin were aware of the fact that Goodwin & Hallman were the attorneys for the representatives of the estate, and such attorneys agreed with Kontz and Austin to procure from the representatives of the estate their assent to the sale, and they did procure such assent, and the administrator and administratrix executed personally a quitclaim deed to the land as a part of and in furtherance of the sale. The representatives of the estate were aware of the inadequate price paid for the land. They are partisans of the defendants, and have willingly accepted and acted on the advice of Goodwin &

Hallman. It was and is the purpose of all the defendants to permit the sale to stand; and the purpose of the administratrix and administrator to approve and continue to approve it, though aware of its illegal character and of the grossly inadequate price paid; and the purpose of Kontz and Austin to claim the property under the sale. "The said representatives of said estate, with full knowledge of the facts set forth relative to said sale, approve the purpose of said defendants; they refuse to bring suit to correct, or in any manner question, said illegal sale; they refuse to do anything whatsoever in the way of instituting legal procedure of any character for the purpose of attacking this transaction." The court rejected the amendment, sustained the demurrer, and dismissed the petition. Plaintiff excepted.

*Edgar Latham,* for plaintiff. *Kontz & Austin,* for defendants.

LUMPKIN, J. (After stating the facts.) Laying aside mere general allegations of fraud and illegality, and the adjectives used in making them, the substantial grounds on which the plaintiff rests his case are, that an interest in real estate left by his deceased father was sold at a private sale, instead of at public sale by the administrators; that the administrators and heirs executed quitclaim deeds to the purchasers; that the former law partners of the decedent executed to the purchasers a conveyance, as surviving partners and attorneys in fact of the decedent; that the consideration of the sale was $750, while the decedent's interest in the real estate was worth $5,000; that the administrators refused to sue for the purpose of recovering the land; and that the plaintiff executed a quitclaim deed to the purchasers, not observing that it contained the name of any grantees, and left it with Mr. Hallman, one of the defendants, upon the condition that there should be no sale of the property or delivery of the quitclaim deed until the plaintiff had been notified thereof and acquainted with the price to be paid, but that it was delivered without compliance with this condition.

The plaintiff is in no position to invoke equitable aid to set aside a sale of his deceased father's property on the ground that it was a private sale and not a public one. His own allegations show clearly that he knew it was to be a private sale, and took part in accomplishing that result. The allegations as to the making of a quitclaim deed by him for the purpose of avoiding delay, and as to the inquiry whether a purchaser had been found, and the other allega-

tions of the petition show that if the making of a private sale was fraudulent, as he charges, he was a party to the fraud. It was no fraud on him. Messrs. Goodwin & Hallman could, of course, make a conveyance to their interest in the property. But we do not perceive from the face of this record how they could convey an interest in land which belonged to the decedent, either as surviving partners or attorneys in fact. Where land is conveyed to a firm, the members are tenants in common. . *Cottle* v. *Harrold,* 72 *Ga.* 830 (3); *Baker* v. *Middlebrooks,* 81 *Ga.* 491. Real estate is not ordinarily partnership assets of a law firm, so that the survivors, as such, have power to dispose of it. Unless coupled with an interest, a power of attorney terminates upon the death of its maker. *Lathrop* v. *Brown,* 65 *Ga.* 312. But if the plaintiff desired to attack the power of attorney, he should have alleged that it did exist, or that it did not exist, as the case may be, or that he did not know; and should not have rested upon a mere allusion to it. Still, whether the deed from Messrs. Goodwin & Hallman operated to convey the interest of the decedent or not would be immaterial, if all of the heirs made conveyances to the purchasers.

It is contended that the right to recover possession of the property forming part of the estate of the decedent is in the administrators, and that if there be administration, an heir at law can not bring suit unless the administrators consent thereto; and this is undoubtedly the general rule. Civil Code, § 3357; *Greenfield* v. *McIntyre,* 112 *Ga.* 691; *Crummey* v. *Bentley,* 114 *Ga.* 749. But it would not apply if administrators themselves committed a fraud upon the estate or colluded with others to do so, and were parties, necessary or proper, to an equitable proceeding by heirs to protect their rights. Certainly an administrator could not appropriate property of an estate to his own personal use, or collude with others to defraud the estate, and yet reply to an equitable action by the heirs that he was the only proper party to bring the suit, and that he could not be sued unless he sued himself or consented for the heirs to sue him. See *Edwards* v. *Kilpatrick,* 70 *Ga.* 328. In that case, however, all the heirs were parties plaintiff, and the administrator and the person with whom he was alleged to have colluded were defendants. In the present case only one of the heirs is the plaintiff, and the administrators are not defendants. It would hardly seem that one heir alone could go further than was

necessary to protect his own interest, or could recover the entire estate for the benefit of other heirs, in spite of their quitclaim deeds and over their protest. The allegation in regard to debts is entirely too vague to affect the question. Of course, we do not mean to say that there was any fraud in this case, as matter of fact, but we are dealing with the pleadings.

Mere general allegations of fraud are insufficient. "It is well settled that a general allegation of fraud, in a bill, amounts to nothing—it is necessary that the complainants show, by specifications, wherein the fraud consists. Issuable facts must be charged. The demurrer confesses only what is well pleaded." *Carter* v. *Anderson,* 4 *Ga.* 519. In the present case it was charged that all the defendants were aware of "the illegal and fraudulent course which has been pursued;" but under the sifting effect of a special demurrer, the proposed amendment alleged, as to Messrs. Kontz and Austin, only that they were aware that Messrs. Goodwin & Hallman were the attorneys of the representatives of the estate; that the latter agreed to procure and did procure the assent of the representatives to the sale; that the former intended to continue to claim the land; and that they knew what they paid for it.

On one subject the petition sets out a meritorious claim. It alleges, that the plaintiff agreed with Mr. Hallman to execute a quitclaim deed upon condition that it should be held by the latter and that there should be no sale of the property or delivery of the deed until the plaintiff had been notified thereof and acquainted with the price to be paid; that the deed was accordingly left with Mr. Hallman under this condition, but was delivered to Messrs. Kontz and Austin without compliance therewith; that the plaintiff was kept in ignorance of this fact, and upon demand its return was promised by Mr. Hallman, but it was not in fact returned. The petition does not make Mr. Hallman the agent of the purchasers in this transaction, but rather the agent of the plaintiff. If he was so, he was a special agent, and it is alleged that he was without authority to deliver the deed except upon the condition named. If this be true, a delivery so made would be ineffectual. The plaintiff in his pleadings speaks of the quitclaim deed as an escrow, but probably this is not technically correct. "An escrow, ex vi termini, is a deed delivered to some third person, to be by him delivered to the grantee upon performance of some precedent condi-

tion by the grantee or another, or the happening of some event." *Duncan* v. *Pope,* 47 *Ga.* 451; Civil Code, § 3603. If a deed remains in the control of the maker, it is not strictly an escrow. Devlin on Deeds, §§ 282, 283, 324. But it is immaterial whether the allegations make a case of an escrow or of a special agent authorized to deliver only on a certain condition. In either event, he would not be authorized to deliver the deed, .except upon the happening of the condition. See, on this subject, Devlin on Deeds, § 322; Black *v.* Shreve, 13 N. J. Eq. 454; 13 Cyc. 562; 1 Central L. J. 560; *Riley* v. *Johnson,* 10 *Ga.* 414; *Wellborn* v. *Weaver,* 17 *Ga.* 267; *O'Neal* v. *Brown,* 67 *Ga.* 707 (2); *Crawford* v. *Foster,* 6 *Ga.* 202; *Lewis* v. *Board of Commissioners,* 70 *Ga.* 486; *Dixon* v. *Bristol Savings Bank,* 102 *Ga.* 461, 464; *Moore* v. *Farmers' Ins. Asso.,* 107 *Ga.* 206. In *Moody* v. *Threlkeld,* 13 *Ga.* 55, a person signed a paper in blank and authorized his agent to write a note above the signature. He was treated as a general agent for that purpose. In *Bonner* v. *Nelson,* 57 *Ga.* 433, a surety signed a negotiable note and left it with his principal, believing and expecting that another surety would sign it also. But the note was delivered by the principal to the payee without an additional signature. It was held that the defense, to be available, must include the two elements of incompleteness and notice. These cases differ from the one at bar.

The plaintiff is the proper party to institute a proceeding to cancel his own deed for alleged improper delivery. The administrators could not do that for him. To the extent of seeking to cancel this quitclaim deed, the petition alleges a case which can stand the test of the demurrers, though the allegations, even as to this point, are rather vague and uncertain. In other respects they are insufficient. As already stated, what the evidence may show is not now for consideration. The petition is considered on demurrer.

*Judgment reversed in part, and affirmed in part. All the Justices concur, except Fish, C. J., absent.*