9748. ADAIR *et al.* *v.* SMITH, executor.

1. Where a renting agent, acting for the owner of the property, enters into a contract of lease with a tenant, it is not competent to engraft thereon, without the consent of the owner, stipulations relating to the mutual obligations arising out of the contract between the agent and the owner, so as to bind the latter thereby, since stipulations of this character are foreign to the subject-matter of the lease contract and do not concern the parties to that agreement.

2. But where, at the instance of the agent and without the practice of any fraud upon his part, the owner of the property, with actual knowledge that such terms and provisions are in the contract, enters his own

endorsement upon the contract of lease as signed by the agent and by him presented to the owner for approval, then the stipulations referred to become mutually binding upon both the agent and the owner as an agreement thus arrived at by and between them.

3. Where one who occupies such a confidential or fiduciary relationship as agent presents to his employer for approval such a contract made in the employer's behalf with a third person and relating to the business and purposes of his employment, but also containing a stipulation foreign to the subject-matter of the lease and concerning and effecting the rights and interests of the employer and the agent as to matters arising out of the contract, the employer will not be bound to the agent by his approval of the stipulations thus embraced in the writing, unless he had actual knowledge that it contained such provisions.

4. "Generally, an agency is revocable at the will of the principal. The appointment of a new agent for the performance of the same act, or the death of either principal or agent, revokes the power. If, however, the power is coupled with an interest in the agent himself, it is not revocable at will; and in all cases the agent may recover from the principal, for an unreasonable revocation, any damages he may have suffered by reason thereof." Civil Code (1910), § 3575 (1). The interest of the agent, above referred to, must lie in the subject-matter of the agency, and not merely in the profits which are to result from the exercise of the power; that is to say, in a case like the instant one, the agent must have an interest in the contract of rental, and not merely in the contract of agency by virtue of which he is to be compensated for his future services in the collection of the rents. The work and expense of an authorized agent in finding a tenant and securing a lease could be taken as sufficient to establish such an interest in the contract of rental.

5. While, as a general proposition, all choses in action arising upon contract and involving property rights may be assigned so as to vest title in the assignee (Civil Code of 1910, §§ 3653, 3654), there is a well recognized exception to this rule, which applies in those instances where the contract involves a relation of personal confidence, such as to show that the party conferring the rights must necessarily have intended them to be exercised only by him upon whom they were actually conferred. *Tifton &c. Ry. Co.* v. *Bedgood*, 116 *Ga.* 945 (43 S. E. 257); *Cowart* v. *Singletary*, 140 *Ga.* 435, 446 (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116); 5 C. J. 880, §§ 46, 47. But even though the subject-matter of a contract might of itself in a sense indicate that it was intended to be personal in its nature, the parties thereto can nevertheless by the express terms of the agreement manifest a different purpose and intent (5 C. J. 875); and thus where the contract is within itself and by its own express terms made assignable, a contrary purpose will not, as a matter of law, be set up and enforced, unless from a consideration of the entire instrument such a contrary construction is clearly demanded. Where the agreement in effect provides that the service may be performed either by the contracting party himself or by such other person as the contract may be assigned to, in order that

a construction contrary to such expressed intent can as a matter of law be inferred it must appear, from the nature of the contract, that the performance of the obligation by another would be essentially different in result from what had been contracted for.

3. Where a rent contract, after having been procured and effected at the expense and trouble of an agent, has been approved for him by the owner, with actual knowledge on the owner's part of a stipulation therein providing that a stated commission from the rent shall go from him to the agent, and stating that the rent shall be paid to the agent named, "its successors or assigns," an assignee of the contract, upon his acceptance thereof, will ordinarily assume the burdens and acquire the benefits provided for by the terms of the agreement. See Alden *v.* Frank Improvement Co., 57 Neb. 67, 69 (77 N. W. 369).

DECIDED JANUARY 16, 1919.

Certiorari; from Fulton superior court—Judge Bell. March 25, 1918.

Forrest and George Adair, real estate and renting agents, sued Jasper N. Smith for certain commissions claimed to be owing to them. Charles P. Glover Realty Company, as the agent of Smith, prepared and executed a lease of a building owned by him to Marbut & Young, for a period of five years, at a monthly rental of $50; which lease was signed "Chas. P. Glover Realty Company, Agent, by Eugene S. Kelly, Vice-President," and by the lessees. Thereafter the lease was presented by the Charles P. Glover Realty Company to Smith for approval, and he made thereon the following entry: "Approved, Jasper N. Smith." The pleadings of the defendant allege, and the evidence in support thereof indicates, that Smith, by reason of his age and infirmity, was unable to read the contract; but the evidence for the plaintiffs authorized the municipal judge (who tried the case without a jury) to find that the defendant actually knew, when he approved the agreement, that it contained the following stipulation: "It is agreed by all parties hereto that the above stipulated rental shall be paid to Chas. P. Glover Realty Co., Agent, its successors or assigns, and Chas. P. Glover Realty Co. is to receive a commission of five per cent. of said rental for the time specified in this contract, the same to be paid by the owner," although the defendant himself testified that he had not authorized Glover Realty Company to make a lease containing any such clause, and did not know that such a clause was in the lease, and relied on the company to prepare a proper lease, and signed it without reading it. The defendant testified: "Glover Realty Company had my busi-

ness because Mr. Aycock was a stockholder and manager of their rent department, and was attending to my business." Aycock testified that the defendant let him put it in the hands of Glover Realty Company because the defendant liked him and had paid him to attend to the defendant's business, and he was manager of the rent department, and the defendant thought he would look after it properly. Glover Realty Company, in writing, "for value received", transferred and assigned to the plaintiffs, Forrest & George Adair, "their heirs, successors, or assigns, any and all rights the said Chas. P. Glover Realty Company now has, or may hereafter have to receive a commission of five (5) per cent, of the rentals agreed to be paid as specified in the attached contract of lease dated November 1, 1915, between Chas. P. Glover Realty Co., as agent for Jasper N. Smith, as lessor, and G. F. Marbut and R. G. Young, as lessees, together with any and all rights the said Chas. P. Glover Realty Co. now has, or may hereafter have, to have the stipulated rentals provided for in said attached contract paid to it, and together with all right, title, interest, claim, or demand that said Chas. P. Glover now has or may hereafter have or acquire against the said Jasper N. Smith, or the said G. F. Marbut, or the said R. G. Young, under or by virtue of any of the terms, conditions, or agreements of the said attached contract of lease." Forrest and George Adair gave Smith written notice of the assignment, and notice that they asserted a right to collect the rentals and receive the commission; and they gave the tenants written notice of the assignment, and demanded that the rentals be paid only to them. Smith told the plaintiffs that Aycock was attending to his business, and that he (Smith) had a perfect right to do as he pleased, and that while he had no objections to the Adairs, he had not employed them, and for this reason he repudiated the assignment of the contract. After the assignment Smith first placed the business with another firm, who collected the rents and received the commissions, and this arrangement continued until Aycock went into the renting business for himself, after which the rents were collected by him, and he in turn received the commissions.

The case was tried before one of the judges of the municipal court of Atlanta. Smith defended on the grounds hereinafter stated. Judgment was rendered for the plaintiff, and the defendant sued out certiorari upon the following grounds: (a) Said

judgment is contrary to the evidence and without evidence to support it, and is therefore contrary to law. (b) Said judgment is contrary to the weight of the evidence and is therefore contrary to law. (c) Because the evidence showed that petitioner had revoked the agency of Glover Realty Company, and said agency was revocable under the law. (d) Because the agency given to Glover Realty Company was not coupled with any interest in the subject-matter of the agency, and was therefore revocable under the law. (e) The evidence showed that the petitioner desired the special and peculiar services of Glover Realty Company because Mr. C. G. Aycock was a stockholder in said company and manager of its rent department, and the agency was given to Glover Realty Company on that account, and the authority of that company could not be delegated to its assigns without his permission and consent, which he had never given. (f) Because Glover Realty Company could not legally turn over the collection and custody of his rents to any one except such person as he might himself designate. (g) Because contract rights coupled with liabilities or involving a relation of personal confidence between the parties cannot be transferred to a third person by one of the parties to the contract without the assent of the other. (h) Because the clause in the lease contract on which the plaintiffs relied did not state that any commission should be paid to any one except Glover Realty Company, and did not make it payable to their assigns. (i) Because the mere use of the word "assigns" in the part of said clause relating to collection of rents did not make the contract assignable when it called for personal service. (j) Because a right of action is not assignable if it does not involve, directly or indirectly, a right of property. (k) Because Glover Realty Company had no property right or interest in petitioner's property or rents, and a right to commission is not an interest in the property. (l) Because the clause quoted in paragraph 4 of plaintiff's petition was not a contract between Jasper N. Smith and Glover Realty Company, but was only inserted in a contract between Jasper N. Smith (acting through his agent Glover Realty Company) and Marbut & Young. (m) Because petitioner's agent, Glover Realty Company, was not authorized to make lease contracts with tenants containing any such clause as that quoted in paragraph 4 of plaintiff's petition. The duty of

Glover Realty Company was to act in behalf of petitioner's interest, and not to enter into contracts with tenants for the benefit of said agent and sacrificing the interests of said agent's employer. (*n*) Because there was no consideration moving from Glover Realty Company to petitioner, or from Marbut & Young to Glover Realty Company, or to petitioner, or from or to any other person, for any contract of petitioner to turn over the right to collect his rents to any person to whom Glover Realty Company might assign its alleged rights without petitioner's consent. (*o*) Said Adairs did not assume and could not have been compelled to perform the duties of Glover Realty Company unto petitioner, or to bear any liabilities unto petitioner on account of said assignment. (*p*) Because the said clause was void for lack of mutuality and want of consideration. (*q*) Because the commissions sued for were, at the time of said assignment, a mere possibility of having a future commission, which could not be legally sold or assigned.

The superior court sustained the certiorari and rendered final judgment in favor of the defendant. The plaintiffs except to the judgment of the superior court, and assign error thereon upon the ground that it is contrary to law, contrary to evidence, and without evidence to support it.

*A. A. & E. L. Meyer,* for plaintiffs.

*E. M. & G. F. Mitchell,* for defendant.

JENKINS, J. (After stating the foregoing facts.) Something may properly be said in elaboration of the last two divisions of the syllabus. The clause in the lease agreement making the rent payable either to the Glover Realty Company, or to its successors or assigns can not be construed, as was done in Swarts *v.* Narragansett Electric Lighting Co., 26 R. I. 436 (59 Atl. 111), as words merely descriptive of the persons who might take an interest in or incur a liability under the contract, but must be taken as effecting the terms of the contract itself. Here the words as plainly employed designate the person or persons who shall *execute* the contract, and are not intended to be merely descriptio personæ and to pertain only to who might acquire a right or incur a liability thereunder. See also Schlesinger *v.* Forest Products Co., 78 N. J. L. 637 (76 Atl. 1024, 30 L. R. A. (N. S.) 347, 138 Am. St. R. 637). But while, in the proper construction of a contract which might otherwise be taken as having been intended to be personal in its

nature and therefore non-assignable, heed must thus be given to the actual and different intent as evidenced by the language used, still we do not mean to say that even the actual incorporation of general words of assignment must always and necessarily show that the real intent of the agreement was not to procure the benefit of a personal and peculiar service. As was stated by the late Justice Lumpkin in *Cowart* v. *Singletary,* cited in the syllabus, "Certain classes of contracts are inherently non-assignable in their character, such as promises to marry, or engagements for personal services, requiring skill, science, or peculiar qualifications." As an example of an engagement calling for such special, personal, and peculiar skill or qualifications, Chief Justice Stiness, of the Supreme Court of Rhode Island, in Swarts *v.* Narragansett Electric Lighting Co., supra, instances an agreement whereby one obligates himself to paint a portrait for another. In such a case, even were the word "assigns" added to the name of the party upon whom the obligation itself is imposed, it still could not be thought or held that the mere addition of such word could reasonably manifest an intention to render assignable a contract which in its very nature was inherently personal and utterly incapable of thus being made so. While it might be truly said that the services involved in the instant case call for the exercise of integrity and ordinary business capacity (and the same might be said as to almost any engagement), still it cannot be contended that they involve the exercise of any special and peculiar talent, or that their performance by another would be essentially different in result from what had been contracted for. When the assignee of the contract collects the rent and turns it over to the owner, the service is precisely and in all respects the same as if the work had been accomplished by the original agent. Here, as always, the intent of the parties, as shown by the contract, at last must govern; and while it might be altogether reasonable to suppose that an owner might desire some particular person, for some particular reason, to execute such a service, still there is no reason why the law would forbid or prevent his making a contrary agreement authorizing the agent to assign the contract of service to another; and where the contract as made plainly expresses such a purpose, it should be considered that he intended to do that which he actually did, unless it be that the work provided for, if performed by another, would be essentially different from what has been contracted for.

The question has not been an altogether easy one to decide, since all the arguments, both in justice and under the law, do not seem unmistakably to point the same way. But under our view of the law, when the contract as agreed upon by the owner made the rent payable either to Glover Realty Company or to such other person as the contract might be assigned to, the owner (so far as his liability for commissions is concerned) lost the power to select for the service one of his own particular and peculiar choice, even though it be granted that the service might, in a sense, otherwise and ordinarily be properly considered as personal in its nature. It might well be said that the agent's power of assignment would not authorize him to require the owner to accept in his stead the services of one who was dishonest, or one who was incompetent to perform even such an ordinary task; but no such question as this is made by the record, and the defendant in fact has made specific disclaimer of any such ground of defense.

It is our opinion that the judge of the superior court erred in sustaining the certiorari and rendering final judgment in favor of the defendant.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*