19643.   REGENSTEIN *v.* J. REGENSTEIN COMPANY *et al.*

ARGUED MARCH 12, 1957—DECIDED APRIL 8, 1957.

*Marvin O'Neal, Jr.,* for plaintiff in error.
*Louis Regenstein, Jr., Barry Phillips, Smith, Kilpatrick, Cody, Rogers & McClatchey, D. F. McClatchey,* contra.

MOBLEY, Justice. Mrs. Evelyn Regenstein, a minority stockholder of J. Regenstein Company, brought her petition against the corporation, its officers and directors, seeking an injunction against the continued operation of one of the corporation's retail stores and an accounting and judgment against certain of the corporate officers for alleged mismanagement of corporate affairs resulting in financial loss to the corporation. A general demurrer to the petition was sustained and the petition dismissed. To this judgment the plaintiff has excepted.

Code § 22-710 provides: "So long as the majority of stockholders confine themselves within the charter powers, a court of equity will require a strong case of mismanagement or fraud before it will interfere with the internal management of affairs

of a corporation." Section 22-711 provides in part as follows: "A minority stockholder may proceed in equity in behalf of himself and other stockholders for fraud or acts ultra vires against a corporation, its officers and those participating therein, when he and they are injured thereby. But there must be shown—1. Some action or threatened action of the directors beyond the charter powers; or, 2. Such a fraudulent transaction completed or threatened, among themselves or stockholders or others, as will result in serious injury to the company or other stockholders; or, 3. That a majority of the directors are acting in their own interest in a manner destructive of the company, or of the rights of the other stockholders; . . ." The question presented for decision in the instant case is, does the petition state a cause of action under the above Code sections by alleging sufficient facts to show (1) action or threatened action of the directors beyond their charter powers, (2) a fraudulent transaction, or (3) that a majority of the officers and directors are acting in their own interest in a manner destructive of the corporation or of the rights of other stockholders?

The petition alleges that the defendant officers and directors have committed various acts and have been guilty of conduct in violation of their fiduciary duties; that they have diverted, expended, and wasted corporate funds contrary to the corporate charter; that their conduct and the transactions complained of have been for the purpose of benefiting individual officers and directors to the detriment of the corporation; that the transactions complained of are fraudulent, ultra vires, and illegal. The allegations may be divided into three groups: those pertaining to the operation of the Whitehall Store, those as to the operation of The Mirror, and those as to the salary of the president of J. Regenstein Company. These will be considered seriatim.

As to the operation of the Whitehall Store, it is alleged: that the defendant corporation operates three retail specialty stores in Atlanta known as the Whitehall Store, the Peachtree Store, and the Buckhead Store; the defendant officers and directors have continued to operate and maintain the Whitehall Store, despite the fact that since 1951 it has operated at a loss; the Whitehall Store carries lower priced and poorer quality merchan-

dise than the other two stores, which confuses the buying public and adversely affects the business of the other two stores which carry high quality, prestige merchandise; the capital used in the Whitehall Store could be more profitably used in other stores; the corporation has difficulty in securing efficient and skillful sales personnel for all of its stores, and the personnel of the Whitehall Store could be used in the other stores; the premises of the Whitehall Store are unattractive and injure the reputation of the corporation generally; the Whitehall Store building is owned by Robert Regenstein, the vice-president and secretary of the corporation, his brother, and step-mother, who receive an annual rental therefor from the corporation in excess of $12,000; the building is dilapidated, and to rent it to someone else would require an expenditure in excess of $25,000 for repairs; management consultants employed by the company reported in 1954 that the Whitehall Store should be discontinued. The petition alleges that the Whitehall Store could be discontinued at great savings to the corporation, and that it is continued in operation for the personal benefit of Robert Regenstein and certain of his relatives.

"The right to control the affairs of a corporation is vested by law in its stockholders—those whose pecuniary gain is dependent upon its successful management. The majority stockholders, or the majority of the directors, when directors are chosen to act on behalf of the stockholders, have the right to determine the business policy of the corporation, and the minority must submit to their judgment in such matters, when exercised in good faith and not involving acts ultra vires, or in breach of trust. As was said by this court in *Hand* v. *Dexter*, 41 *Ga.* 454, 461, 'The very foundation principle of a corporation is that the majority of its stockholders have the right to manage its affairs, so long as they keep within their charter rights.' No principle of law is more firmly fixed in our jurisprudence than the one which declares that the courts will not interfere in matters involving merely the judgment of the majority in exercising control over corporate affairs." *Bartow Lumber Co.* v. *Enwright*, 131 *Ga.* 329, 333 (62 S. E. 233); *Malone* v. *Armor Insulating Co.*, 191 *Ga.* 146 (12 S. E. 2d 299). Clearly the allegations as to the Whitehall Store

carrying lower-priced merchandise, capital employed therein could be better utilized in the other stores, employees used there should be used in the other stores, the physical appearance of the premises, and the recommendation of management consultants employed by the company, are questions for management. As far as these matters are concerned nothing is alleged to show that the defendant officers and directors have not acted in good faith or have acted in breach of their fiduciary trust.

"A lease of property to a corporation by one of its officers, or by a corporation to an officer, is valid in the absence of fraud or prejudice to the corporation." 19 C. J. S. 155, § 782. " 'It is well settled that a general allegation of fraud, in a bill, amounts to nothing—it is necessary that the complainant show, by specifications, wherein the fraud consists. Issuable facts must be charged. The demurrer confesses only what is well pleaded.' *Carter* v. *Anderson,* 4 *Ga.* 516, 519; *Tolbert* v. *Caledonian Ins. Co.,* 101 *Ga.* 741, 746 (28 S. E. 991); *Miller* v. *Butler,* 121 *Ga.* 758 (3) (49 S. E. 754); *Anderson* v. *Goodwin,* 125 *Ga.* 663, 669 (54 S. E. 679); *Jones* v. *Robinson,* 172 *Ga.* 746, 747 (3c) (158 S. E. 752); *Robertson* v. *Panlos,* 208 *Ga.* 116, 118 (65 S. E. 2d 400)." *Rowland* v. *Rich's, Inc.,* 212 *Ga.* 640, 641 (94 S. E. 2d 688). "General allegations of a breach of trust count for nothing, even as against a general demurrer." *Malone* v. *Armor Insulating Co.,* 191 *Ga.* 146, 150, supra. The allegations that Robert Regenstein has violated a fiduciary duty to the corporation by failing to close the Whitehall Store, that he has done so in order that he and his family may benefit from the receipt of rentals, and that the other officers and directors have assented to and participated in such action, are conclusions without facts to support them. The gist of the allegations is that, in order to benefit Robert Regenstein and his named relatives, he and the other officers and directors have continued to operate the store at a loss. Obviously, to sustain this contention, the petition must allege facts which if proved would show that the continued operation of the store would benefit Robert Regenstein and his relatives. This the petition fails to do, for the term of the lease is not alleged nor is it shown that, if the corporation vacated the premises, the lease would terminate and the corporation be no

longer required to pay rent therefor. So far as the petition shows, the mere discontinuance of operation of the Whitehall Store would not stop payment of rentals to Robert Regenstein and his family, and, consequently, it fails to show that the continued operation of the store would benefit them in any way. The allegation that, if the corporation vacated the store, expensive repairs would have to be made before the building could be rented to another tenant is purely conjectural and a conclusion with no facts alleged upon which it is based. The allegation that the Whitehall Store is continued in operation at a loss for the personal benefit of Robert Regenstein and his family is merely a general allegation of fraud without specifying issuable facts constituting fraud, which "amounts to nothing." *Carter* v. *Anderson*, 4 *Ga.* 516, supra.

The petitioner relies strongly upon the case of *Collier* v. *Mayflower Apartments*, 196 *Ga.* 419 (26 S. E. 2d 731), a case where it was alleged that the officers of Anjaco, Inc., accepted $12,500 in full settlement of a $20,000 note, adequately secured, which had been given to Anjaco, Inc., by Mayflower Apartments, Inc., the latter company being solvent and capable of paying the note in full, and the settlement being made for the benefit of an officer and stockholder of Mayflower Apartments, Inc. This court said: "In the face of an allegation that the Mayflower, Inc., had on hand $25,000 available for the purpose of satisfying in full Anjaco's debt, the directors settled it for a substantially less sum; and there being nothing on the face of the petition to negative the clear implication, the reasonable deduction, and the natural inference to be drawn from such an allegation, or otherwise to explain away the above recited facts, or to extract therefrom the natural conclusion that in so acting the directors were guilty of positive maladministration, which amounted to no less than actual fraud, it must be held that the petition, so construed, alleged a cause of action against the directors who were made defendants." P. 425. In the instant case it is not true that the clear implication, the reasonable deduction, and the natural inference to be drawn from the allegations demand the natural conclusion that the directors in this case are guilty of positive maladministration which amounted to

actual fraud. To continue to operate one segment of a business, or even an entire business enterprise, at a loss does not constitute fraud per se. There may be many reasons which dictate such a course. And unless sufficient facts are alleged which show that such a course is pursued for reasons which are fraudulent, ultra vires, or illegal, a court of equity will not interfere to control the management of a corporation.

As to The Mirror, the petition alleges that three officers and directors of the defendant corporation own an interest in, control, and have operated a store known as The Mirror adjacent to and in competition with the Whitehall Store since 1951, selling merchandise of the same kind and quality; that said officers and directors have obtained the most profitable merchandise for The Mirror, resulting in financial loss to the Whitehall Store; that they have received dividends from The Mirror as a result of a diversion of customers and business from the defendant's Whitehall Store, all of which constitute fraudulent, ultra vires, and illegal transactions, and have been acquiesced in by the other officers and directors of the defendant corporation. "Corporate officers and directors, so long as they act in good faith toward their company and its associates, are not precluded from engaging in a business similar to that carried on by their corporation, either on their own behalf or for another corporation of which they are likewise directors or officers. So long as he violates no legal or moral duty which he owes to the corporation or its stockholders, an officer or director is entirely free to engage in an independent competitive business." 3 Fletcher Cyclopedia Corporations 214, § 856. "When acting in good faith, a director or officer is not precluded from engaging in distinct enterprises of the same general class of business as the corporation is engaged in; but he may not wrongfully use the corporation's resources therein, nor may he enter into an opposition business of such a nature as to cripple or injure the corporation." 19 C. J. S. 160, § 785, and cases cited. Accepting those general principles of law, does the petition allege facts which warrant the conclusion that the operation of The Mirror has been fraudulent, ultra vires, and illegal? The fact that The Mirror sells merchandise of the same type and quality is not fraudulent or illegal;

the allegation that the defendant directors have violated their fiduciary duty by obtaining the most profitable merchandise for The Mirror resulting in loss to the Whitehall Store is a general and indefinite conclusion and capable of constructions entirely consistent with good faith on the part of said officers. It is not alleged how the purchase of profitable merchandise for The Mirror resulted in loss to the Whitehall Store. Assuming that The Mirror makes more profit on its merchandise than the Whitehall Store, facts are not alleged which show that this is a result of any fraud or mismanagement on the part of the defendant officers and directors, and well could have been the result of an error of judgment or an honest mistake in management. The allegation that certain officers and directors have received dividends from The Mirror as a result of a diversion of customers and business from the Whitehall Store is a mere conclusion. How customers and business were diverted, or facts showing that customers and business were actually diverted from the Whitehall Store are not alleged. The petition fails to allege when The Mirror was acquired by these directors, fails to allege when it was established at its present location, and fails to show which store, The Mirror or the Whitehall Store, was located first. The petition alleges that The Mirror is operated in competition with the Whitehall Store. It necessarily follows that the Whitehall Store is likewise operated in competition with The Mirror. Only three of the nine directors of the defendant corporation are also directors of The Mirror. So far as the petition shows, The Mirror may have been located first and the Whitehall Store established adjacent thereto, in competition with The Mirror and against the wishes of The Mirror's directors.

As to the salary of the president, it is alleged that he has been paid a salary of $25,000 per year, that he has failed to manage or control the affairs of the corporation and direct its policies, but has delegated such duties to the vice-president; that he has not performed any services of value and his salary is excessive; that a salary of $10,000 per year would be a maximum that should be paid him; and that the payment of said salary is illegal, ultra vires, and fraudulent. Clearly the question of whether the president is performing services of value is one of

opinion, and the directors of the corporation are in a better position to know the value of the services of the president than would this court. The question of delegation of duties by the president is one of management, and the directors may in good faith feel that, even if the president did no work at all, his reputation and popularity with customers and the confidence of the public in him, gained through many years of service with the company, might justify the payment of such a salary. No facts are alleged which would justify the conclusion that the payment of this salary is fraudulent, ultra vires, or in any way illegal.

Applying the foregoing to the ruling of the trial court, it was not error to sustain the general demurrer to the petition. As the judgment of the trial court is affirmed, the motion to dismiss the bill of exceptions is not passed upon.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*