## 47145. CUTCLIFFE v. CHESNUT.

Clark, Judge. This case originated by a complaint alleging defendant Cutcliffe had received $25,000 from plaintiff's testator, John Harvey Chesnut, for the purpose of effect-

ing a stock purchase for the latter but that the stock was never delivered to him during his lifetime nor was the money returned to Chesnut or to his executor or to anyone on his behalf.

This appeal marks the second appearance of this case. On the prior appeal reported as *Cutcliffe v. Chesnut,* 122 Ga. App. 195 (176 SE2d 607), a summary judgment granted plaintiff was considered. This court then ruled a breach of contract of agency is a breach of contract for which the principal is entitled to resort to remedies provided by the law of contracts, but it was further held, in view of evidentiary deficiencies, that the trial court erred in summarily granting the plaintiff a judgment for restitution.

On return of the case to the court below a trial was had before a judge sitting without the intervention of a jury. After hearing evidence judgment was entered for plaintiff for $10,362.45. Defendant appeals, enumerating as error the denials of his motion to dismiss made at the close of the plaintiff's evidence and his motion for new trial made on the general grounds only. There is no cross appeal by the plaintiff.

Chesnut, father of the plaintiff executor, and Cutcliffe were close friends. Cutcliffe was an advisor to Chesnut and Chesnut's family. Cutcliffe had had a social and business relationship (as a Certified Public Accountant) with the decedent since 1955; Cutcliffe testified he considered himself a "confident" of decedent and his family. They both owned stock in a corporation known as Monterey Management Company in which Cutcliffe was a corporate officer. They decided to purchase an additional 1,500 shares to be divided between themselves from William H. Murray. It was believed the purchase could be made for $60 per share totaling $90,000. Cutcliffe was to effect the purchase. He put up $65,000 of which $40,000 was obtained through a bank loan endorsed by Chesnut. The decedent delivered his check for $25,000 to Cutcliffe who gave decedent his receipt. This receipt is contained in

full in the previous opinion including the recital "that the check is one of agency for acquisition of shares of stock in Monterey Management Company . . ." Cutcliffe deposited the $25,000 check to his account and effected the purchase from Murray on February 10, 1966, the same day the check and receipt were given. Cutcliffe informed decedent that the acquisition had been made and "endorsed the certificates onto the books of the corporation." The reason Cutcliffe did not immediately issue decedent his portion amounting to 416.66 shares of the stock was because decedent specifically instructed him not to, saying that he wanted to wait until he had resolved certain family problems. Seven months later Chesnut died suddenly, without ever having given Cutcliffe directions as to how the stock should be issued.

Shortly after decedent's death Cutcliffe advised J. David Chesnut (decedent's son, executor, and plaintiff herein) that he had received $25,000 from his father for the purchase of the specified stock. Plaintiff replied he already knew of the transaction and had found Cutcliffe's receipt in a safety deposit box. Plaintiff's relationship with Cutcliffe was such that he looked upon him as a "second father." The two discussed the situation generally then and on subsequent occasions. Plaintiff testified he mentioned on one or more of these occasions a need for "the money" by his father's estate to meet anticipated taxes. But because of more important and more pressing business for each of them nothing transpired on the subject at the time or during the following several months.

On June 15, 1967, the plaintiff wrote Cutcliffe a letter which he signed in his capacity as executor. This letter which was not a part of the record in the previous appeal reads: "Mr. William H. Cutcliffe, President. Monterey Management Co. 338 Lenox Towers, West. 3390 Peachtree Road, N. E. Atlanta, Georgia 30326. Re: Estate of John Harvey Chesnut. Dear Bill: As I am sure you will recall, on previous occasions you and I had discussed the sum of money which had been used by you and my fa-

ther in the corporate development of Monterey Management Company. At that time I was supposed to take stock in the company rather than a return of the money. However, in light of recent developments concerning the amount of taxes that are presently due on the 1966 income and will probably be due for estate tax purposes and in order to place the estate in a more liquid position, I feel that it is going to be necessary for us to request the money rather than stock. I realize that this cannot be accomplished overnight and would accordingly like to discuss with you what procedures could be taken to accomplish this with the least burden on those concerned. Yours very truly, Gerstein & Carter. /s/ John David. John David Chesnut, Executor under Will of John Harvey Chesnut." Cutcliffe testified he received the letter but that he did not respond. He said he interpreted it as asking for money rather than stock, put it aside, and it thereafter escaped his mind because of the press of other business.

The minutes of three annual stockholders' meetings held subsequent to the Murray stock acquisition show Cutcliffe on record as "representing" the entire 1,500 shares. Decedent was present at the first meeting. Plaintiff was present at a subsequent meeting representing other shares (not involved in this litigation) which his father held in the corporation.

On March 28, 1969, plaintiff as executor of his father's estate through his attorneys made oral demand (confirmed in writing on that same date) for $25,000 which Cutcliffe refused. On April 23, 1969, Cutcliffe tendered a stock certificate representing 417 shares of Monterey stock to decedent's estate which plaintiff refused.

The trial judge elicited evidence of the stock's book value for the year endings of 1965, 1966, 1967, 1968 and 1969. These varied, showing an increase for the first two years and then a decline in 1968 and 1969 with Monterey Management Co. declared bankrupt on October 16, 1970. *Held:*

1. "Where the issue was tried by a judge without a jury

this court will not disturb his finding if there is any evidence to support it. *Madison v. Montgomery,* 206 Ga. 199 (2) (56 SE2d 292). If there was conflict in the evidence that view of it must be taken, on appeal, which is most favorable to the prevailing party. *City of McRae v. Folsom,* 191 Ga. 272, 277 (11 SE2d 900)." *Baker v. State,* 123 Ga. App. 394 (3) (181 SE2d 288); *Wilkerson v. Wilkerson,* 126 Ga. App. 172 and citations.

The transcript of evidence does not show a breach of the agency contract for the purchase and delivery of stock for decedent. If by any reasoning it could be argued that the agency agreement with relation to the stock was still executory, that relationship terminated upon Chesnut's death. Death of the principal terminates the agency unless the agent's power is coupled with an interest. *Code Ann.* § 4-214 (1); *Anderson v. Goodwin,* 125 Ga. 663 (3) (54 SE 679). The interest of the agent must lie in the subject matter of the agency and not merely in the contract of agency. *Coney v. Sanders,* 28 Ga. 511; *Adair v. Smith,* 23 Ga. App. 290 (4) (98 SE 224). Cutcliffe's power was not coupled with an interest.

Nor will the evidence support a contention that decedent or plaintiff standing in his place was ever authorized by the original agreement to elect between the stock or the money.

The evidence does show that the contract by the principal and agent for the purchase of shares of stock for decedent was completely and successfully executed before decedent's death. Thereupon Cutcliffe became the authorized custodian of decedent's stock during decedent's lifetime, he having been directed by the latter to hold the same until further instructions.

Thus the principles of bailment law are applicable and controlling under the circumstances of this case, including the duty on a bailee to return the thing bailed when the purpose of the bailment has ended. Generally see, 8 Am Jur2d 1059, Bailment, § 170; Brown, Personal Property, p. 351, § 86 (2d Ed. 1955).

The trial judge was authorized by the evidence to find the existence of a bailment for the benefit of the bailor for an indefinite period (i.e., custody or possession of Chesnut's stock by Cutcliffe pending disposition instructions from Chesnut) which ended when Chesnut died without ever having given direction. The duty of delivering the stock to the decedent-bailor's representative arose as and when the representative qualified and was in a position to receive it. *Booth v. Terrell,* 16 Ga. 20 (11); *Code* § 12-511. A concomitant liability arose from a failure to do that which the law requires, such liability being measured as the depreciation in value of the stock from the time of the executor's qualification to the time of the tender.

2. The judgment of the trial judge sitting without a jury was authorized by the evidence. There was no error in denying the defendant's motion for new trial on the general grounds or in denying the defendant's motion to dismiss made at the close of the plaintiff's evidence.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*
ARGUED MAY 5, 1972—DECIDED MAY 26, 1972

*Westmoreland, Hall & Bryan, John L. Westmoreland, Jr., J. M. Crawford,* for appellant.

*Gerstein, Carter & Chesnut, Joe W. Gerstein,* for appellee.